```
 1  MICHAEL J. IOANNOU (SBN 95208)
    LITA M. VERRIER (SBN 181183)
 2  DANIEL P. McKINNON (SBN 234749)
    ROPERS, MAJESKI, KOHN & BENTLEY
 3  50 W. San Fernando St., Suite 1400
    San Jose, CA 95113
 4  Telephone: (408) 287-6262
    Facsimile: (408) 918-4501
 5  mioannou@rmkb.com;
    lverrier@rmkb.com;
 6  dmckinnon@rmkb.com

 7  Attorneys for Plaintiff
    AXON SOLUTIONS, INC.
 8
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AXON SOLUTIONS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAN DIEGO DATA PROCESSING CORPORATION, a California publicly owned corporation; and the CITY OF SAN DIEGO, a charted political subdivision of the State of California,<br><br>Defendants. | CASE NO. 09 CV 2543 JM RBB<br>The Honorable Jeffrey T. Miller<br><br>**PLAINTIFF AXON SOLUTIONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO DEFENDANT SAN DIEGO DATA PROCESSING CORPORATION'S MOTION TO DISMISS THE FIFTH, SIXTH, AND SEVENTH CLAIMS OF PLAINTIFF'S COMPLAINT**<br><br>Date: **January 15, 2010**<br>Time: **1:30 p.m.**<br>Judge: **The Hon. Jeffrey T. Miller**<br>Courtroom: **16, 5th Floor**<br><br>Complaint filed: November 12, 2009 |

RC1/5464215.1/KM3

Axon's Opposition to SDDPC's Motion to Dismiss
Claims of the Complaint
Case No. 09 CV 2543 JM RBB

# TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | SUMMARY OF FACTUAL ALLEGATIONS IN COMPLAINT | | 1 |
| | A. | Parties | 1 |
| | | 1. Plaintiff Axon Solutions, Inc | 1 |
| | | 2. San Diego Data Processing Corporation ("SDDPC") | 1 |
| | | 3. The City of San Diego | 1 |
| | B. | The Masters Service Agreement Between The Parties | 1 |
| | C. | City's/SDDPC's Termination of the MSA for Convenience | 2 |
| | D. | The City's/SDDPC's Unauthorized Use Of Axon's Trade Secrets, Pre-Existing IP, Proprietary Software, Derivative Works, Deliverables and Copyright Protected Materials | 2 |
| | E. | The City/SDDPC Agreed to Pay Axon For Extra Work And Services During The Termination Period | 3 |
| III. | LEGAL ANALYSIS | | 4 |
| | A. | Applicable Law | 4 |
| | B.. | Axon's Common Counts Are Not Properly Dismissed | 5 |
| | | 1. In Its Fifth And Sixth Claims, Axon Properly Seeks the Reasonable Value Of Defendants' Use Of Its Pre-Existing IP, Copyright And Trade Secret Material And Proprietary Information And Partial Performance Of the Contract | 6 |
| | | 2. SDDPC's Motion To Dismiss Axon's Seventh Claim For Account Stated Should Be Denied Because Axon Pled Sufficient Extra Contractual Facts Supporting It | 8 |
| | | 3. Incorporating Factual Allegations By Reference Is Proper | 10 |
| IV. | CONCLUSION | | 10 |

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Berkla v. Corel Corp.*, 302 F.3d 909, 918 (9th Cir. 2002) .................................................. 7

*Burnett v. Rowzee*, 2007 U.S. Dist. LEXIS 96098, 21-22 (C.D. Cal. 2007) ..................... 5

*Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996) ........................................ 5

*Chados v. W. Publ. Co.*, 292 F.3d 992, 1001-1003 (9th Cir. 2002) .................................. 8

*Congrove v. Western Mesquite Mines, Inc.* 2009 U.S. Dist. LEXIS 15584 (S.D. Cal. 2009) ........ 4

*Conley v. Gibson*, 355 U.S. 41, 47 (1957) ........................................................................ 4

*Cont'l D.I.A. Diamond Prods. v. Dong Young Diamond Indus. Co.*, 2008 U.S. Dist. LEXIS 65908 (N.D. Cal. 2008) ........................................................................... 7

*DCD Programs, Ltd v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) ............................. 10

*International Assoc. of Machinists & Aerospace Workers v. Republic Airlines*, 761 F.2d 1386, 1390 (9th Cir. 1985) ............................................................................ 10

*Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) ................................... 5

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ...................................... 5

*McCalden v. California Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1992) .................. 6

*Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir.), *cert. dismissed*, 473 U.S. 934 (1985) .................................................................................................. 7

*Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001) ...................................................... 4

*Newman . Sathyavaglswaran*, 287 F.3d 786, 788 (9th Cir. 2002) ................................... 4

*Olympic Coast Inv., Inc. v. Seipel*, 208 Fed. Appx. 569, 571 (9th Cir. 2006) .................. 4

*Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994) ..................... 4

*Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003) ......................................................... 4

*Powell v. Union Pac. R.R. Co.*, 2009 U.S. Dist. LEXIS 92655 (E.D. Cal. 2009) ............. 4

*Roots Ready Made Garments v. Gap, Inc.*, 2008 U.S. Dist LEXIS 67669 (N.D. Cal. 2008) ......... 8

*Smith v. Pac. Props. & Dev. Corp*, 358 F.3d 1097, 1106 (9th Cir. 2004) ........................ 4

*Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1999) .................................................. 4

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

## STATE CASES

*Fogarty v. McGuire,* 170 Cal.App.2d 405, 409 (1959).................................................................9

*Gleason v. Klamer,* 103 Cal.App.3d 782, 786-787 (1980) ...........................................................9

*H. Russell Taylor's Fire Prevention Service, Inc. v. Coca Cola Bottling Corp.,* 99
    Cal.App.3d 711, 726 (1979)......................................................................................................9

*Hedging Concepts v. First Alliance Mortgage Co.,* 41 Cal.App.4th 1410, 1419-1420
    (1996) ........................................................................................................................................7

*Perry v. Schwartz,* 219 Cal.App.2d 825, 829 (1963) ....................................................................9

*Truestone, Inc. v. Simi West Industrial Park II,* 163 Cal.App.3d 715, 725 (1984)........................9

*Withers v. Matthews,* 192 Cal.App.2d 139, 141 (1961)................................................................9

## STATUTES

Federal Rule of Civil Procedure 8(a)(2)........................................................................................4

Federal Rule of Civil Procedure 8(f).............................................................................................4

Federal Rule of Civil Procedure 8(d) ............................................................................................4

Federal Rule of Civil Procedure 12(b)(6) ..................................................................................4, 5

# I.
# INTRODUCTION

Rather than address the merits of the action, Defendant San Diego Data Processing Corporation ("SDDPC" or "DPC") instead chooses to ignore the liberal pleading rules and bring a motion to dismiss plaintiff Axon Solutions, Inc.'s alternate theories of recovery set forth in its Common Counts. As set forth below, SDDPC's motion is without merit and should be denied.

# II.
# SUMMARY OF FACTUAL ALLEGATIONS IN COMPLAINT

## A. Parties

### 1. Plaintiff Axon Solutions, Inc.

Plaintiff Axon Solutions, Inc. ("Axon"), is in the business of, among other things, providing business and computer consulting services, software product development, implementation, and application management services. *Plaintiff's Complaint ("Compl."),* ¶ 2. Axon is renowned for its global ability to help clients define more ambitious strategies, build more effective organizations and shape more successful futures. *Ibid.*

### 2. San Diego Data Processing Corporation ("SDDPC")

Defendant SDDPC is a California non-profit publicly owned corporation. On behalf of the City of San Diego, SDDPC is in the business of providing information systems and telecommunication services to the City of San Diego's divisions and departments. *Compl.,* ¶ 3.

### 3. The City of San Diego

Defendant City of San Diego (the "City") is a chartered political subdivision of the State of California. *Compl.,* ¶ 4. The City manages and controls SDDPC. *Ibid.* The City transacts its technology and telecommunications business through SDDPC. *Ibid.* The City is responsible for all outstanding debts owed by SDDPC. *Ibid.*

## B. The Masters Service Agreement Between The Parties

After a bid process, on September 28, 2007, Axon and the City/SDDPC entered into a Master Services Agreement ("MSA") wherein Axon agreed to provide the City/SDDPC with a range of requested professional computer software services, including the development of newly

created custom deliverables for implementation, integration, consulting, and software enhancement of the "mySAP ERP 2005" software application for use by the City in return for the payments set forth in the MSA and other terms. *Compl.*, ¶ 8. This included, for example, Axon developing modules for the City for Grants Management, Financials (Accounts Payable, Accounts Receivable, General Ledger, etc.), Procurement, Inventory Management, Sales and Distribution, Governance, Risk and Compliance, Human Capital Management, Payroll, Financial Planning, Budgeting and Forecasting, Tax, Collections and Disbursements. *Compl.*, ¶ 8.

C.  **City's/SDDPC's Termination of the MSA for Convenience**

On November 20, 2008, after substantial work and services by Axon, the City/SDDPC terminated the MSA for "convenience" pursuant to Section 2.2 of the MSA. Section 2.2 and Article 5 of the MSA provided that the City/SDDPC could, with 30 calendar days' advanced written notice, terminate the agreement for "convenience" *subject to* payment of all Axon outstanding invoices for work completed, payment for any work in progress but not yet completed, and also Axon's wind-down costs. *Compl.*, ¶ 11. On November 24, 2008, the City/SDDPC provided Axon with formal notice of termination for convenience, with said termination to be effective December 19, 2008. *Compl.*, ¶ 11.

By terminating the contract for convenience, not cause, City/SDDPC accepted all work that was in progress at the time of said termination and cannot now dispute that Axon is entitled to full compensation for: 1) the holdback payments on deliverables that were accepted and signed off by City/SDDPC prior to the notice of termination; 2) the 100% and partially completed deliverables that were provided to City/SDDPC on or before December 19, 2008; and 3) the wind-down costs incurred as a result of the early termination of the MSA. *Compl.*, ¶ 13. The City's financial obligations to Axon as a result of the termination for convenience of the MSA are in excess of $5,592,482, as fully set forth in Axon's Complaint.

D.  **The City's/SDDPC's Unauthorized Use Of Axon's Trade Secrets, Pre-Existing IP, Proprietary Software, Derivative Works, Deliverables and Copyright Protected Materials**

Axon's Trade Secrets, Pre-Existing IP, Proprietary Software, Derivative Works, Deliverables and Copyright Protected Materials were contained in the professional computer

software services provided by Axon, including the development of newly created custom deliverables for implementation, integration, consulting, and software enhancement of the "mySAP ERP 2005" software application for use by the City. *Compl.,* ¶ 8. These provisions regarding the IP rights are contained in the MSA and quoted in the Complaint:

> Provisions 7.1 and 7.2 identify the rights to Axon's Trade Secrets, Pre-Existing IP, Proprietary Software, Derivative Works, Deliverables and Copyright Protected Materials. *Compl.,* ¶¶ 36, 37. Specifically, Section 7.1 of the MSA expressly provides that the City/SDDPC have no rights to use, copy or make derivative works from any custom deliverables, including source code and other proprietary information they have not paid for. *Compl.,* ¶ 36
>
> Similarly, Section 7.2 of the MSA expressly provides that neither the City or SDDPC have the right to use any of AXON's pre-existing intellectual property. *Compl.,* ¶ 37

Finally, there is no provision in the MSA that provides The City/SDDPC with rights to Axon's trade secret and copyright protected materials consisting of custom software code among other protected materials provided to the City/SDDPC. *Compl.,* ¶ 36

Notwithstanding the fact that the City/SDDPC have no rights to Axon's Deliverables, Pre-existing IP, and copyright and trade secret protected materials, the City/SDDPC are currently using Axon's Deliverables, Pre-existing IP, and copyright and trade secret protected materials. *Compl.,* ¶ 39. On July 1, 2009, the City/SDDPC went live with the "mySAP ERP 2005" application which contains Axon's proprietary and protected property. This use of Axon's proprietary and protected property is infringement of significant and substantial intellectual property rights. *Compl.,* ¶ 43.

E. **The City/SDDPC Agreed to Pay Axon For Extra Work And Services During The Termination Period.**

After notification of the termination for convenience, the City/SDDPC instructed Axon to perform additional work between November 21, 2008, and December 19, 2008. Axon and the City/SDDPC regularly discussed the status of the deliverables and how to best transition the project through December 19, 2008. *Compl.,* ¶ 18. Plaintiff Axon completed the requested additional work and Defendants agreed to pay for it after discussing the scope and amounts claimed by Axon to be owed. *Compl.,* ¶¶ 24-32. No such amounts, however, were ever paid to

Axon.

## III.
## LEGAL ANALYSIS

A. **Applicable Law.**

"A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint." *Congrove v. Western Mesquite Mines, Inc.*, 2009 U.S. Dist. LEXIS 15584 (S.D. Cal. 2009) citing *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). "A complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2) to evade dismissal under a Rule 12(b)(6) motion." *Id.*, citing *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). "Rule 8(a)(2) requires that a pleading stating a claim for relief contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' The function of this pleading requirement is to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' *Id.*, quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

Federal Rule of Civil Procedure 8 requires the Court to construe Axon's pleadings liberally in the interests of justice. *Olympic Coast Inv., Inc. v. Seipel*, 208 Fed. Appx. 569, 571 (9th Cir. 2006) citing Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice."). "Under the federal rules of pleading, a party may set out more than one alternative claim, regardless of consistency; the pleading is sufficient if any one of them is sufficient." *Powell v. Union Pac. R.R. Co.*, 2009 U.S. Dist. LEXIS 92655 (E.D. Cal. 2009) citing Federal Rule of Civil Procedure 8(d).

In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Newman v. Sathyavaglswaran*, 287 F.3d 786, 788 (9th Cir. 2002); *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court must also assume that the general allegations embrace the necessary, specific facts to support each of the claims. *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1106 (9th Cir. 2004); *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994). In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited to

reviewing only the complaint, but may review materials which are properly submitted as part of the complaint and may take judicial notice of public records outside the pleadings. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996).

If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).

### B. Axon's Common Counts Are Not Properly Dismissed

SDDPC moves to dismiss Axon's Fifth Claim for Quantum Meruit because of the existence of a written contract (the "MSA"). Specifically, SDDPC claims that Axon cannot recover on an implied contract theory where there exists an express contract covering the same subject matter. (Motion, pp. 2:15-17.) Similarly, SDDPC moves to dismiss Axon's Sixth Claim for Goods and Services Sold and Delivered and its Seventh Claim for Account Stated because they are common counts and according to SDDPC, are "subject to the rule against recovery on an implied contract theory where there exists an express contract between parties." (Motion, pp. 5: 17-19.)

These arguments are invalid, however, as the Complaint contains extra-contractual allegations that are not promises Axon bargained for in the MSA and also promises made in order to induce Axon to continue working after the notice of termination. Further, the liberal pleading rules permit alternate theories to be pled by Axon. It is also well established that:

> "[a] common count can be used as an alternative way of seeking the same recovery demanded in a specific cause of action but, should the underlying cause of action fail, the common count must also fail. However, where a plaintiff alleges multiple causes of action in addition to the common count, the common count survives unless each of the other causes are dismissed."

*Burnett v. Rowzee*, 2007 U.S. Dist. LEXIS 96098, 21-22 (C.D. Cal. 2007) (citations omitted).

The second basis of SDDPC's assertion that Axon's Fifth, Sixth and Seventh Claims should be dismissed is that since Axon incorporated by reference into its Fifth, Sixth and Seventh

claims against SDDPC all other allegations of the Complaint, including those arising out of the express contract. SDDPC, however, fails to acknowledge those additional facts alleged by Axon and incorporated by reference into the Fifth, Sixth and Seventh Claims allow said Claims to remain as pled and form the basis for the alternative claim theories.

### 1. In Its Fifth And Sixth Claims, Axon Properly Seeks The Reasonable Value Of Defendants' Use Of Its Pre-Existing IP, Copyright And Trade Secret Material And Proprietary Information And Partial Performance Of The Contract.

In its Fifth Claim for Relief for Quantum Meruit, and its Sixth Claim for Relief for Goods and Services Sold and Delivered, Axon seeks the reasonable value of SDDPC's use of Axon's Pre-existing IP, copyright and trade secret protected material, and confidential and proprietary information as well as additional work performed. *Compl.*, ¶¶ 90, 95. Any rights under the MSA to use Axon's proprietary materials were extinguished when SDDPC terminated the MSA for convenience as set forth above in the Summary Of Facts Alleged In The Complaint and MSA attached to the Complaint. Pursuant to these Claims, Axon also seeks payment for amounts which SDDPC (and the City) requested that Axon perform after the Notice of Termination, with the promise of full payment. *Compl.*, ¶¶ 18-23. In part, the Complaint alleges:

> After notification of the termination for convenience, CITY/SDDPC instructed AXON to perform additional work between November 21, 2008 and December 19, 2008. . . . As a direct result of these instructions to complete these deliverables, AXON continued working on the project based on the CITY's/SDDPC's representations that AXON would be fully compensated for the holdback amounts and already completed and partially completed deliverables provided to the CITY/SCCPC on or before December 19, 2008. *Compl.*, ¶¶ 18-19.

As such, those amounts sought include amounts not specifically detailed in the MSA, but which were due because of SDDPC's specific requests and because of the termination for convenience and continued use of Axon's proprietary, trade secret and copyrighted materials after said termination without payment.

Ninth Circuit law is clear that "in light of the liberal pleading policy embodied in Rule 8(e)(2) . . . a pleading should not be construed as an admission against another alternative or inconsistent pleading in the same case." *McCalden v. California Library Ass'n*, 955 F.2d 1214,

- 6 -
Axon's Opposition to SDDPC's Motion to Dismiss
Claims of the Complaint
Case No. 09 CV 2543 JM RBB
RC1/5464215.1/KM3

1219 (9th Cir. 1992) quoting *Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir.), *cert. dismissed*, 473 U.S. 934 (1985). California District Courts have specifically stated that a party may plead quantum meruit despite the existence of a contract and the supposed "contradiction" in the pleadings. *See Cont'l D.I.A. Diamond Prods. v. Dong Young Diamond Indus. Co.*, 2008 U.S. Dist. LEXIS 65908 (N.D. Cal. 2008).

The case law cited by SDDPC does not support its theory that the Claim must be dismissed at the pleading stage. In fact, *Berkla v. Corel Corp.*, 302 F.3d 909, 918 (9th Cir. 2002) supports Axon's claims that Quantum Meruit can be pled in the alternative. In that case, the Court simply held that at *trial*, there could not be double recovery for a plaintiff. It also specifically held that: "Although the facts here do not permit [plaintiff] Berkla to pursue remedies under both the breach of contract and the breach of confidence claims, this is not to say that a party will necessarily plead itself out of court if, in the face of a breach of an express NDA, it elects also to assert a breach of confidence claim arising out of a common nucleus of fact." *Id.*

In *Hedging Concepts v. First Alliance Mortgage Co.*, 41 Cal. App. 4th 1410, 1419 (1996), also cited by SDDPC, SDDPC failed to note that the *trial court* determined that the quantum meruit amount given to plaintiff contradicted the express terms of the contract. *Id.* It was not a motion to dismiss or demurrer, it was based on factual findings of the trial court. The Appeals Court further stated:

> "By contrast, if a court finds no contract formation, the court can then in certain circumstances find an implied contract to pay reasonable value for beneficial services rendered with a mistaken belief that a contract had been formed. Here, however, the court found the parties did have a contract covering compensation, and the terms of the parties' contract thus control the subject of compensation." *Id.* at 1420.[1]

It its Complaint herein, Axon details both the additional non-contractual amounts owed to Axon as a result of the post-termination notice, as well as other amounts owed to Axon that are not "liquidated debts" pursuant to the contract and therefore can be pled alternatively in quantum

---

[1] The Court also confirmed that "[a] quantum meruit or quasi-contractual recovery rests upon the equitable theory that a contract to pay for services rendered is implied by law for reasons of justice." *Id.*

- 7 -
RC1/5464215.1/KM3 | Axon's Opposition to SDDPC's Motion to Dismiss Claims of the Complaint — Case No. 09 CV 2543 JM RBB

1 meruit. As confirmed in *Roots Ready Made Garments v. Gap Inc.*, 2008 U.S. Dist. LEXIS 67669
2 (N.D. Cal. 2008), issues and promises that are not explicitly covered by a contract are valid basis
3 for which to assert common counts.

4 It is also well established that "[u]nder California law, a party who has been injured by a
5 breach of contract may generally elect what remedy to seek. In a leading case on election of
6 remedies, the California Supreme Court stated: It is well settled in this state that one who has
7 been injured by a breach of contract has an election to pursue any of three remedies, to wit: He
8 may treat the contract as rescinded and may recover upon a quantum meruit so far as he has
9 performed; or he may keep the contract alive, for the benefit of both parties, being at all times
10 ready and able to perform; or, third, he may treat the repudiation as putting an end to the contract
11 for all purposes of performance, and sue for the profits he would have realized if he had not been
12 prevented from performing. . . . ." *Chodos v. W. Publ. Co.*, 292 F.3d 992, 1001-1003 (9th Cir.
13 2002) (citations omitted).

14 This inquiry is not determined at the pleading stage but is a question of fact as to what
15 occurred prior to termination, how much was paid, and other factors. This was explained in detail
16 in the *Chodos* case with regard to royalties claimed to be owed to him for sales of a book: "The
17 mere existence of a fixed percentage royalty in a contract does not render that royalty a
18 'liquidated debt,' if the revenues to which that percentage figure is to be applied cannot be
19 calculated with reasonable certainty. Here, it is impossible to determine even now what those
20 revenues would have been had [Defendant] West not frustrated the completion of the contract.
21 . . . . Accordingly, . . . . Chodos is entitled to sue for restitution for the time and effort he
22 reasonably invested in writing the manuscript." *Chodos v. W. Publ. Co.*, 292 F.3d 992, 1001-
23 1003 (9th Cir. 2002). Similarly in this case, Axon has alleged both extra work asked to be
24 performed as well as alleged improper use of its pre-existing IP and other proprietary materials
25 for which it is owed money. Accordingly, the Fifth and Sixth Claims are not properly dismissed.

26 **2. SDDPC's Motion to Dismiss Axon's Seventh Claim For Account Stated Should Be Denied Because Axon Pled Sufficient Extra Contractual Facts Supporting It**
27
28 Likewise, Axon's Seventh Claim for Account Stated should not be dismissed. An account

- 8 -

Axon's Opposition to SDDPC's Motion to Dismiss
Claims of the Complaint
Case No. 09 CV 2543 JM RBB

RC1/5464215.1/KM3

1  stated is an agreement between the parties that a certain sum shall be paid and accepted in
2  discharge of an obligation. *Truestone, Inc. v. Simi West Industrial Park II*, 163 Cal.App.3d 715,
3  725 (1984); *Withers v. Matthews*, 192 Cal.App.2d 139, 141 (1961). To establish an account
4  stated, a plaintiff must show three elements: . . . [A]t the time of the statement, an indebtedness
5  from one party to the other existed, a balance was then struck and agreed to be the correct sum
6  owing from the debtor to the creditor, and the debtor expressly or impliedly promised to pay to
7  the creditor the amount thus determined to be owing. *Truestone, supra*, 163 Cal.App.3d at 725
8  *quoting H. Russell Taylor's Fire Prevention Service, Inc. v. Coca Cola Bottling Corp.*, 99
9  Cal.App.3d 711, 726 (1979). Therefore, an action on an account stated is a "new" contract by
10 and under which the parties have adjusted their differences and mutually reached an agreement.
11 *Gleason v. Klamer*, 103 Cal.App.3d 782, 786-787 (1980); *Fogarty v. McGuire*, 170 Cal.App.2d
12 405, 409 (1959). Put another way, "[a]n account stated is an agreed balance of accounts; an
13 account which has been examined and accepted by the parties. It implies an admission that the
14 account is correct, and that the balance struck is due and owing from one party to the other."
15 *Perry v. Schwartz*, 219 Cal.App.2d 825, 829 (1963).

16 As pled in the Complaint, after notification of the termination for convenience,
17 City/SDDPC instructed Axon to perform additional work between November 21, 2008 and
18 December 19, 2008. Axon and the City/SDDPC regularly discussed the status of the deliverables
19 and how to best transition the project through December 19, 2008. Specifically, in Paragraphs 24
20 through 32, and again in Paragraphs 97 through 98 of the Complaint, Axon has alleged that after
21 being asked to do this additional work, in addition to work under the MSA, it was confirmed that:

> AXON was entitled to the full amounts owed by the CITY/SDDPC
> for 100% completion of milestones/deliverables 1-4, 1-6, and 2-3. .
> . . . . On December 18, 2008 . . . . after discussing the calculations
> used to arrive at the percentages of completion, AXON revised
> some of the calculations based on the CITY's/SDDPC's inputs. . . .
> Therefore, as of December 19, 2008, the parties had agreed that the
> CITY/SDDPC would issue payment for the outstanding 100%
> completed deliverables by December 31, 2008, and that the
> partially completed deliverables, holdback amounts, and wind
> down costs would be fully paid in January 2009. *Compl.*, 24-32.

RC1/5464215.1/KM3

- 9 -

Axon's Opposition to SDDPC's Motion to Dismiss
Claims of the Complaint
Case No. 09 CV 2543 JM RBB

1  Therefore, Axon has properly pled an Account Stated between the parties.

2  **3.  Incorporating Factual Allegations By Reference Is Proper**

As is standard, Axon incorporated by reference the preceding Paragraphs in its Claims for Common Counts which does not render them fatally defective. In order to cohesively describe the complicated facts, it was necessary for Axon to set forth the facts in chronological order. That has no impact on the Claims asserted. There are no contradictory or inconsistent facts only "inconsistent" theories of recovery. None of the facts alleged contradicts terms in the MSA.

If, however, the Court finds it defective the way the Common Count Claims are pled, it should allow Axon to amend. The cases cited by SDDPC in support of not allowing Axon to amend are not only in opposite factually, but they are not California or Ninth Circuit cases. Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend "shall be freely given when justice so requires." The decision whether to grant leave to amend lies within the sound discretion of the trial court. *International Assoc of Machinists & Aerospace Workers v. Republic Airlines*, 761 F.2d 1386, 1390 (9th Cir 1985). In the Ninth Circuit, leave to amend is to be granted with "extreme liberality" and should be denied only when amendment would be frivolous, prejudicial, cause undue delay or where there has been bad faith. *DCD Programs Ltd v. Leighton*, 833 F.2d 183, 186 (9th Cir 1987). None of those circumstances can be met here.

**IV.**
**CONCLUSION**

For the foregoing reasons, Axon respectfully requests that the Court deny SDDPC's motion in its entirety. If any of the Claims are dismissed, however, Axon respectfully requests leave to amend.

Dated: December 31, 2009                    ROPERS, MAJESKI, KOHN & BENTLEY

By: _____
MICHAEL J. IOANNOU
LITA M. VERRIER
DANIEL P. McKINNON
Attorneys for Plaintiff
AXON SOLUTIONS, INC.