1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AXON SOLUTIONS, INC., a Delaware corporation,<br><br>                                      Plaintiff,<br><br>       vs.<br><br>SAN DIEGO DATA PROCESSING CORPORATION , a California publicly-owned corporation; and the CITY OF SAN DIEGO, a chartered political subdivision of the State of California,<br><br>                                      Defendants. | CASE NO. 09 CV 2543 JM (RBB)<br><br>**ORDER DENYING DEFENDANT CITY OF SAN DIEGO'S MOTION TO DISMISS**<br><br>Doc. No. 21 |

Plaintiff Axon Solutions, Inc. ("Axon") initiated this litigation on a contract it held with Defendant San Diego Data Processing Corporation ("SDDPC"), a publicly-owned, non-profit corporation which provides information technology services to Defendant City of San Diego (the "City"). The City filed a motion to dismiss all claims, which the court granted in part and denied in part. (Doc. No. 15). Axon filed a first amended complaint. (Doc. No. 20). The City once again moves to dismiss Axon's first claim for breach of contract. (Doc. No. 21). Axon filed an opposition to the City's motion and the City filed a reply. (Doc. Nos. 27, 32).

The court finds this matter appropriate for disposition without oral argument. *See* CivLR 7.1(d)(1). For the following reasons, the court hereby DENIES the City's motion to dismiss.

**I. BACKGROUND**

Axon is a Delaware corporation which provides "business and computer consulting services, software product development, implementation, and application management services." (Doc. No. 20, First Amended Complaint, hereinafter "FAC," ¶ 2). The City is a chartered political subdivision of the State of California. (FAC ¶ 4). SDDPC is a California non-profit corporation wholly owned by the City. (FAC ¶ 3).

On September 28, 2007, Axon and SDDPC entered a "Master Services Agreement" ("MSA") by which Axon agreed to provide SDDPC with information technology products and services for use by the City. (FAC ¶ 15). In exchange, SDDPC agreed to pay Axon $16,951,786. (FAC ¶ 16).

The MSA was the result of an extended decision-making process initiated following a report by the City's Audit Committee. The Audit Committee determined that the City needed to upgrade its computer systems. (FAC ¶ 6). The City's Mayor produced a plan for doing so and the City Council approved the plan. (FAC ¶ 8). The City then directed SDDPC to issue a request for proposals, which Axon answered. (FAC ¶¶ 12-13). A committee composed of nine City representatives and four SDDPC representatives reviewed bids and selected Axon. (FAC ¶¶ 13-14).

Axon fulfilled its contractual obligations until SDDPC—at the direction of the City—terminated the agreement for convenience pursuant to section 2.2 of the MSA. (FAC ¶ 62). Upon termination, Axon became entitled to certain payments related to "holdback" amounts, partially completed deliverables, and wind-down costs. (FAC ¶ 76). Nonetheless, after termination, SDDPC and the City continued to use products provided by Axon, which include Axon's trade secret and copyright-protected material.

As neither SDDPC nor the City paid the money due Axon, Axon instituted the claims procedures provided for in article 21 of the MSA. (Compl. ¶ 33). The parties conducted an unsuccessful mediation on August 26, 2009. (Compl. ¶ 34). Axon subsequently filed suit on November 12, 2009. (*See* Doc. No. 1).

## II. LEGAL STANDARD

A court should dismiss an action where a complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Therefore, a motion to dismiss should be granted where the complaint lacks either a "cognizable legal theory" or facts sufficient to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In evaluating the claim a court must "accept as true all of the allegations contained in [the] complaint." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). However, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

In testing the complaint's legal adequacy, the court may consider material properly submitted as part of the complaint or subject to judicial notice. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

## III. DISCUSSION

The City presents four grounds for dismissing Axon's contract claim: (1) the City is not an express party to the MSA; (2) Axon insufficiently pleads that SDDPC is an agent of the City; (3) Axon insufficiently pleads that the City is the alter ego of SDDPC; and (4) holding the City liable on the MSA would violate the City's charter.

### A. Express Party

Regarding the City's first ground, Axon freely admits that the City is not an express party to the MSA. Rather, Axon contends, the City is liable on the MSA either because SDDPC was acting as the City's agent when it signed the MSA, or because the City is the alter ego of SDDPC. Therefore, it is of no moment that the City is not an express party to the MSA.

### B. Agency

To sufficiently plead an agency relationship between SDDPC and the City, Axon must allege facts that demonstrate the City's "degree of control exerted over [SDDPC] . . . is enough to reasonably deem [SDDPC] an agent of [the City] under traditional agency principles." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 541 (Cal. Ct. App. 2000). Under traditional agency principles, "[c]ontrol is the key characteristic." *Id.*

> Accordingly, if a parent corporation exercises such a degree of control over its subsidiary corporation that the subsidiary can legitimately be described as only a means through which the parent acts, or nothing more than an incorporated department of the parent, the subsidiary will be deemed to be the agent of the parent.

*Id.*

The allegations in Axon's first amended complaint meet this standard. The City's audit committee determined that the City needed to upgrade its computer systems. The Mayor outlined a plan for doing so, and the City Council approved the plan. The City then directed SDDPC to issue a request for proposals, which Axon answered. A committee of nine City representatives and four SDDPC representatives selected Axon's bid. Then SDDPC entered the MSA agreement with Axon. Per these allegations, SDDPC could legitimately be described as "nothing more than an incorporated department of the" City that manages information technology services for the City. *Id.* The City, and its elected leaders, were the decision-makers; SDDPC merely followed the City's directions. Therefore, Axon's agency allegations are sufficient to survive the City's motion to dismiss.

### C. Alter Ego

To plead that the City is liable under the MSA as the alter ego of SDDPC, Axon must allege facts showing there is "such a unity of interest and ownership between the [SDDPC] and [the City] that the separate personalities of [the two entities] do not in reality exist" and there will be "an inequitable result if the acts in question are treated as those of [SDDPC] alone." *Id.* at 538.

> Among the factors to be considered in applying the [alter ego] doctrine are commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, . . . use of one as a mere shell or conduit for the affairs of the other[,] . . . inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers.

*Id.* at 538-39 (citations omitted).

Axon's complaint contains factual allegations directed at these factors. Specifically, Axon alleges the City deliberately undercapitalized SDDPC, the City and SDDPC commingle funds, and the City has represented that it is liable for SDDPC's debts. (FAC ¶¶ 67-71).

Furthermore, Axon alleges that the City intends to dissolve SDDPC so that the City can "wrongfully avoid liability for the monies owed to Axon." (FAC ¶ 70). Difficulty in enforcing a judgment or collecting a debt does not satisfy" the requirement of an inequitable act. *Id.* at 539. Here, however, the City would have the power to destroy any remedy available to Axon, from either the City or SDDPC, if it dissolved SDDPC. This rises to the level of an inequitable act for purposes of alter ego doctrine at the pleading stage. Therefore, Axon's alter ego allegations are sufficient to survive the City's motion to dismiss.

### D. Violation of City Charter

The City contends that Axon fails to allege facts showing compliance with two portions of the City's Charter related to contracting with the City.

First, "[a]ll contracts before execution shall be approved as to form and legality by the City Attorney." San Diego, Cal., Charter, Art. VII, § 94. While the City admits that Axon alleges the MSA was approved by the City Attorney, the City argues that the MSA does not bear the City Attorney's signature. The City Charter, however, does not require that the City Attorney sign the contracts in order to approve them. Therefore, Axon's allegation that the City Attorney approved the MSA is sufficient at the pleading stage.

Second, "[f]or contracts exceeding $100,000.00, the Council shall require each contractor insure the faithful performance of his contract by delivering to the City a surety bond in an amount specified by the Council." San Diego, Cal., Charter, Art. VII, § 94. The City admits that Axon alleges the successful bidder was required to post a bond, but argues that Axon fails to allege that Axon actually posted a bond. At the pleading stage, however, this argument is unpersuasive. Axon's allegations regarding the posting of a bond are sufficient to put the City on notice of the claims against it, and therefore state a claim upon which relief can be granted.

//
//
//
//

## IV. CONCLUSION

For the foregoing reasons, the court hereby DENIES Defendant City of San Diego's motion to dismiss. Defendant City of San Diego shall file an answer to the first amended complaint within fifteen (15) days of the filing of this order.

**IT IS SO ORDERED.**

DATED: May 4, 2010

Hon. Jeffrey T. Miller
United States District Judge