1  MICHAEL J. IOANNOU (SBN 95208)
   LITA M. VERRIER (SBN 181183)
2  DANIEL P. McKINNON (SBN 234749)
   ROPERS, MAJESKI, KOHN & BENTLEY
3  50 W. San Fernando St., Suite 1400
   San Jose, CA 95113
4  Telephone: (408) 287-6262
   Facsimile: (408) 918-4501
5  mioannou@rmkb.com;
   lverrier@rmkb.com;
6  dmckinnon@rmkb.com

7  Attorneys for Plaintiff and Counterdefendant
   AXON SOLUTIONS, INC.

8
                  UNITED STATES DISTRICT COURT
9
                 SOUTHERN DISTRICT OF CALIFORNIA
10

11  AXON SOLUTIONS, INC., a Delaware       CASE NO. 09 CV 2543 JM BGS
    corporation,                           The Honorable Jeffrey T. Miller
12
               Plaintiff,                  **PLAINTIFF AXON SOLUTIONS, INC.'S
13                                          MEMORANDUM OF POINTS AND
    v.                                      AUTHORITIES IN SUPPORT OF
14                                          MOTION TO DISMISS DEFENDANT SAN
    SAN DIEGO DATA PROCESSING               DIEGO DATA PROCESSING
15  CORPORATION, a California publicly      CORPORATION'S FIRST AMENDED
    owned corporation; and the CITY OF SAN  COUNTERCLAIM FOR BREACH OF
16  DIEGO, a charted political subdivision of CONTRACT [FRCP 12(b)(6)]; OR
    the State of California,                ALTERNATIVELY, MOTION FOR
17                                          SUMMARY JUDGMENT [FRCP 12(d) and
               Defendants.                  56]**
18

19  SAN DIEGO DATA PROCESSING              **Date: September 17, 2010**
    CORPORATION, a California nonprofit    **Time: 1:30 p.m.**
20  public benefit corporation,           **Judge: The Hon. Jeffrey T. Miller**
                                          **Courtroom: 16, 5th Floor**
21             Counterclaimant,
                                          **Complaint filed: November 12, 2009**
22  v.

23  AXON SOLUTIONS, INC., a Delaware
    corporation,
24
               Counterdefendant.
25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................... 1

II.     ISSUES TO BE DECIDED ..................................................................... 2

III.    LEGAL STANDARD .............................................................................. 2

        A.    Motion to Dismiss Pursuant to Rule 12(b)(6).............................. 2

        B.    Motion for Summary Judgment Pursuant to Rule 12(d) and Rule 56 ................... 2

IV.     PROCEDURAL BACKGROUND........................................................... 3

V.      SDDPC'S COUNTERCLAIM FOR BREACH OF CONTRACT FAILS AS A MATTER OF LAW PURSUANT TO RULE 12(B)(6) ........................... 5

        A.    SDDPC Does Not Allege Axon Was Terminated For Cause Pursuant to Section 2.3.................................................................. 5

        B.    SDDPC's Allegations, the Notice of Termination, Judicially Noticeable Public Documents and Judicial Admissions Conclusively Prove That The MSA Was Terminated For Convenience, Not Cause ............................................. 6

              1.    SDDPC's Factual Allegations Confirm the MSA Was Terminated For Convenience ........................................ 7

              2.    Judicially Noticeable Public Documents and Admissions Prove the MSA Was Terminated for Convenience ...................... 8

        C.    SDDPC's Factual Allegations Confirm SDDPC Did Not Comply With The Requirements To Terminate the MSA For Cause .................................................... 11

              1.    SDDPC Fails To Allege Axon Was Terminated Within 30 Days Of Issuing A Written Notice of Default That Axon Was Unable To Cure ................................ 11

              2.    The May 27, 2008 Letter From The City Was Not A "Notice Of Default" ........................................ 13

        D.    SDDPC Accepted Axon's Work and Did Not Satisfy The Dispute Resolution Procedures.............................................. 16

VI.     TERMINATING FOR CONVENIENCE BARS SDDPC'S CLAIM FOR BREACH OF CONTRACT.......................................................... 17

VII.    SDDPC CANNOT CURE THEIR DEFECTIVE PLEADING BY AMENDMENT ...... 19

VIII.   ALTERNATIVELY, AXON IS ENTITLED TO SUMMARY JUDGMENT THAT SDDPC'S COUNTERCLAIM IS BARRED BY TERMINATING THE MSA FOR CONVENIENCE ................................... 20

IX.     CONCLUSION.................................................................................... 20

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Albrecht v. Lund* 845 F.2d 193, 195-196 (9th Cir. 1988)................................................................ 20

*Ashcroft v. Iqbal* 129 S.Ct. 1937, 1949 (2009) ............................................................................... 2

*Bell Atl. Corp. v. Twombly* 550 U.S. 544, 556 (2007) ................................................................. 2, 6

*Balistreri v. Pacifica Police Dep't* 901 F.2d 696,699 (9th Cir. 1990)........................................... 2

*Celotex Corp v. Catrett* 477 U.S. 317, 322 (1986) ......................................................................... 3

*Chambers v. Time Warner, Inc.* 282 F.3d 147 (2002) ................................................................... 13

*Del Puerto Water Dist. V. U.S. Bureau of Reclamation* 271 F.Supp.2d 1224, 1234
    (E.D.Cal.2003) .......................................................................................................................... 8

*Dumas v. Kipp* (9th Cir., 1996) 90 F.3d 386, 393 ........................................................................ 20

*First National Ins. Co. v. F.D.I.C.* 977 F.Supp. 1051, 1055 (S.D. Cal. 1977) .............................. 3

*Fleischman Distilling Corp. v. Distillers Co.* 395 F.Supp 221 (1975, SD NY) ............................ 8

*Fruin-Colnon Corp, et al., v. Niagra Frontier Trans Authority* 180 a.d.2D 222 (1992).............. 18

*GFF Corp. v. Associated Wholesale Grocers* 130 F.3d 1381 (1997)........................................... 13

*Hensler v. City of Los Angeles* 124 Cal.App.2d 71, 77 (1954)...................................................... 7

*Ileto v. Glock Inc.* (9th Cir. 2003) 349 F.3d 1191, 1200 ............................................................... 2

*In re Silicon Graphics, Inc. Securities Litigation* (9th Cir., 1999) 183 F.3d 970 ....................... 13

*Lucas v. Department of Corrections* (9th Cir., 1995) 66 F.3d 245, 248 ...................................... 20

*Mack v. South Bay Beer Distributors* (9th Cir. 1986) 798 F.2d 1279, 1282....................... 3, 8, 10

*Mullis v. United States Bankruptcy Ct.* (9th Cir. 1987) 828 F.2d 1385, 1388 .......................... 2, 10

*Nissan Fire & Marien Ins. Co. v. Fritz Companies, Inc.* 210 F.3d 1099, 1102 (9th Cir.
    2000) ........................................................................................................................................ 3

*Paragon Restoration Group, Inc. v. Cambridge Square Condominiums* 42 A.D.3d 905
    (2007) ..................................................................................................................................... 19

*Rogerson aircraft Corp. v. Fairchild Industries, Inc.* 632 F.Supp. 1494, 1499 (C.D. Cal.
    1986) .............................................................................................................................. 5, 6, 19

*Schnelke v. JP Morgan Chase Bank* 2010 U.S. Dist LEXIS 28995 (E.D. Cal. Mar 25,
    2010) ........................................................................................................................................ 6

-ii-

**TABLE OF AUTHORITIES**

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

*Southland Corp. v. Emerald Oil Co.* 789 F.2d 1441, 1443 (9th Cir. 1986).................................... 7

*Tishman Construction Corp., Inc. v. City of New York,* 228 A.D.2d 292 (1996) ......................... 18

*Van Buskirk v. Cable News Network, Inc.* (9th Cir., 2002) F.3d 977, 980 .................................. 13

*Venture Assoc. Corp. v. Zenith Data Systems Corp.* 987 F.2d 429 (1993)................................... 13

*Wilson Arlington Co. v. Prudential Ins. Co. of America* 912 F.2d 366 (9th Cir. 1990) ................ 7

*Western Mining Council v. Watt* 643 F.2d 618, 624 (9th Cir. 1981) ............................................ 11

**STATUTES**

Federal Rules of Civil Procedure 12(b)(6).................................................................... 2, 3, 8, 9

Federal Rules of Civil Procedure 12(d) .......................................................................... 20, 21

Federal Rules of Civil Procedure Rules 56(b) ......................................................................... 3

**STATE CODES**

California Civil Code section 1641......................................................................................... 7

**OTHER**

Cibinic & Nash, *Administration of Government Contracts*, p. 1085 (3d ed. 1995) ..................... 17

Witkin, *Summary of California Law* (10th ed.) at section 749, p. 839 ........................................... 8

**TABLE OF AUTHORITIES**

1   Plaintiff and Counterdefendant AXON SOLUTIONS, INC. ("Axon") respectfully submits

2   the following Memorandum of Points and Authorities in Support of its Motion to Dismiss

3   Defendant and Counterclaimant SAN DIEGO DATA PROCESSING CORPORATION's

4   ("SDDPC") First Amended Counterclaim for Breach of Contract (Doc. No. 51) pursuant to

5   Federal Rules of Civil Procedure 12(b)(6), or alternatively, Motion for Summary Judgment of

6   SDDPC's First Amended Counterclaim pursuant to Federal Rules of Civil Procedure 12(d) and

7   56.

8   ## I.

9   ## INTRODUCTION

10   In dismissing SDDPC's original counterclaim, the Court found that: (1) SDDPC failed to

11   allege whether it terminated the MSA for convenience pursuant to Section 2.2, or for cause

12   pursuant to Section 2.3; (2) that if SDDPC was alleging it terminated the MSA for convenience,

13   the counterclaim was likely barred; and (3) that if SDDPC was alleging it terminated the MSA for

14   cause, it failed to allege factual allegations demonstrating it complied with Section 2.3 of the

15   MSA. Doc. No. 48. The Court instructed SDDPC to cure these deficiencies if it elected to file an

16   amended counterclaim. *Id.*

17   Like its original counterclaim, SDDPC's amended counterclaim does not allege that Axon

18   was terminated for cause pursuant to Section 2.3 of the MSA. Instead, SDDPC alleges that it

19   notified Axon by telephone that it "was terminating the MSA", and thereafter issued a "written

20   notice to terminate the MSA". Doc. No.51, First Amended Counterclaim ("AC") at ¶22. In an

21   effort to plead around another Rule 12(b)(6) dismissal, SDDPC alleges it "complied with the

22   requirements for termination under Section 2.3." AC at ¶¶22, 24. Whether SDDPC complied

23   with the requirements of Section 2.3 of the MSA cannot support its counterclaim for breach of

24   contract unless SDDPC alleges it terminated the MSA for cause pursuant to Section 2.3. If the

25   MSA was terminated for convenience pursuant to Section 2.2, it is irrelevant whether SDDPC

26   complied with the requirements of Section 2.3.

27   Further, SDDPC's conclusory allegation that it ignored the City's directives to terminate

28   the MSA for convenience is contradicted by SDDPC's own factual allegations, the documents

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1   incorporated by reference in the amended counterclaim, judicially noticeable public documents,

2   and Defendants' judicial admissions that prove as a matter of law that the MSA was terminated

3   for convenience pursuant to Section 2.2.

4        Therefore, SDDPC's amended counterclaim is a sham, serving only to cause unnecessary

5   delay and needlessly increase the costs of litigation.  To the extent the Court is unwilling to

6   dismiss SDDPC's amended counterclaim pursuant to Rule 12(b)(6), Axon respectfully requests

7   the Court convert its motion to dismiss to a Rule 56  motion for summary judgment pursuant to

8   Rule 12(d).

9                                           **II.**

10                             **ISSUES TO BE DECIDED**

11       Is SDDPC's First Amended Counterclaim barred as a matter of law because the MSA was

12   terminated for convenience, not cause?

13                                          **III.**

14                             **LEGAL STANDARD**

15   **A.    Motion to Dismiss Pursuant to Rule 12(b)(6)**

16       A court should dismiss an action where a complaint fails to "state a claim upon which

17   relief can be granted." Fed. R. Civ. P. 12(b)(6).  Therefore, a motion to dismiss should be granted

18   where the complaint lacks either a "cognizable legal theory" or facts sufficient to support a

19   cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  In

20   evaluating the claim a court must "accept as true all of the allegations contained in [the]

21   complaint." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

22       However, the complaint's "factual allegations must be enough to raise a right to relief

23   above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Further, the

24   court need not "accept any unreasonable inferences or assume the truth of legal conclusions cast

25   in the form of factual allegations." *Ileto v. Glock Inc.*, (9th Cir. 2003) 349 F.3d 1191, 1200.  The

26   court need not accept as true, allegations that contradict facts which may be judicially noticed

27   such as matters of public record including pleadings, orders, and other papers filed with the court

28   or records of administrative bodies.  See *Mullis v. United States Bankruptcy* Ct. (9th Cir. 1987)

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

Axon's Memo of P's & A's ISO Its Mtn to Dismiss
SDDPC's First Amended Counterclaim
Case No. 09-CV-2543 JM BGS

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    828 F.2d 1385, 1388; *Mack v. South Bay Beer Distributors* (9th Cir. 1986) 798 F.2d 1279, 1282.

2    **B.    Motion for Summary Judgment Pursuant to Rule 12(d) and Rule 56**

3           If, on a motion under Rule 12(b)(6), matters outside the pleading are considered, the

4    12(b)(6) motion should be treated as a motion for summary judgment pursuant to Rule 56.

5    Fed.R.Civ.P. 12(d).   Rule 56(b) permits a party against whom a claim is asserted to seek

6    "summary judgment in the party's favor upon all or any part thereof."   The inquiry is "whether

7    the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

8    one-sided that one party must prevail as a matter of law."

9           To carry its burden of production on summary judgment/adjudication, a moving party

10   "must either produce evidence negating an essential element of the nonmoving party's claim or

11   defense or show that the nonmoving party does not have enough evidence of an essential element

12   to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz

13   Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).   See also, *Celotex Corp. v. Catrett*, 477

14   U.S. 317, 322 (1986).   A court "may grant summary adjudication as to specific issues if it will

15   narrow the issues for trial." *First Nat'l Ins. Co. v. F.D.I.C.*, 977 F.Supp. 1051, 1055 (S.D. Cal.

16   1977).

17                                             **IV.**

18                            **PROCEDURAL BACKGROUND**

19          SDDPC's First Amended Counterclaim arises out of the Master Services Agreement

20   ("MSA") and attached Statement of Work ("SOW") that SDDPC, on behalf of defendant CITY

21   OF SAN DIEGO ("City"), entered into with Axon. AC at ¶¶6, 7.   Axon agreed to provide IT

22   products and services related to the integration of the mySAP ERP software platform in the City's

23   computer system.   In exchange, Defendants agreed to pay Axon a fixed price of $16,951,786.00.[1]

24          Axon moved to dismiss SDDPC's original Counterclaim on the grounds that SDDPC

25   terminated the contract for convenience.   Axon also argued that SDDPC was intentionally

26   ambiguous with respect to how the MSA was terminated, and as observed by the Court, "SDDPC

27   _____
     [1] The underlying facts of this case are summarized in the Court's Order (1) Granting Plaintiff's Motion to Dismiss
28   the Counterclaim and (2) Denying Plaintiff's Motion to Strike. Doc. No. 48 at pg. 2.

1   has not clearly alleged in its counterclaim whether it terminated the MSA under Section 2.2 or

2   Section 2.3." Doc. No. 48 at pg. 3.[2]  Rather than state the MSA was terminated for cause,

3   SDDPC claimed "it does not matter whether SDDPC terminated the contract 'for convenience'

4   pursuant to Section 2.2 or 'for cause' pursuant to Section 2.3; in either case, SDDPC is entitled to

5   contract damages." *Id.*

6      The Court dismissed SDDPC's original counterclaim for breach of contract finding that

7   SDDPC had "not clearly alleged in its counterclaim whether it terminated the MSA under Section

8   2.2 or Section 2.3" and if the MSA was terminated for convenience, SDDPC could not assert a

9   claim for damages based on breach of contract.  Doc. No. 48 at pgs. 3-4.  The Court explained:

10  "When considered alongside Section 2.3, Section 2.2 appears to provide termination 'for

11  convenience' that prevents SDDPC from pursuing breach of contract damages....It appears the

12  MSA does not provide a breach of contract remedy to SDDPC if SDDPC terminated the contract

13  pursuant to Section 2.2." *Id.* at pgs. 4-5.

14     After discussing the effect of terminating the MSA for convenience pursuant to Section

15  2.2, the Court went on to find that "SDDPC's current counterclaim does not state a claim if

16  SDDPC terminated the MSA [for cause] pursuant to Section 2.3." *Id.* at pg. 5.  The Court

17  explained that even assuming SDDPC was attempting to allege the MSA was terminated for

18  cause pursuant to Section 2.3, "SDDPC's counterclaim does not contain factual allegations

19  demonstrating compliance with the requirements of Section 2.3, therefore SDDPC has not stated

20  a claim upon which relief can be granted if SDDPC terminated the MSA pursuant to Section 2.3."

21  *Id.*  The Court instructed SDDPC that "[i]f SDDPC elects to file an amended counterclaim, its

22  counterclaim must address the deficiencies identified in this order." *Id.*

23     On July 15, 2010, SDDPC filed its First Amended Counterclaim For Breach of Contract.

24  Doc. No. 51.  For the reasons discussed below, SDDPC's amended counterclaim does not contain

25  factual allegations demonstrating that it terminated the MSA for cause pursuant to Section 2.3.

26  Rather, SDDPC's own allegations, the documents incorporated by reference in the amended

27  _____

28  [2] The Court also noted in response to Axon's Motion to Strike, "SDDPC never clearly admits or denies whether it
    terminated the MSA 'for convenience.'"  Doc. No. 48 at pg. 6.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

Axon's Memo of P's & A's ISO Its Mtn to Dismiss
SDDPC's First Amended Counterclaim
Case No. 09-CV-2543 JM BGS

1    counterclaim, judicially noticeable public documents, and Defendants' judicial admissions prove

2    as matter of law that SDDPC's counterclaim for breach of contract is barred as a result of the

3    MSA being terminated for convenience pursuant to Section 2.2.

4                                                **V.**

5    **SDDPC'S COUNTERCLAIM FOR BREACH OF CONTRACT FAILS AS A MATTER**
     **OF LAW PURSUANT TO RULE 12(B)(6)**

6

7    **A.      SDDPC Does Not Allege Axon Was Terminated For Cause Pursuant to Section 2.3**

8            SDDPC's amended counterclaim fails for the simple reason that SDDPC never alleges the

9    MSA was terminated for cause pursuant to Section 2.3.  Instead, SDDPC alleges only that the

10   MSA was terminated:

11                   ...Axon was notified telephonically on November 20, 2008 that
                     DPC was terminating the MSA.  Pursuant to Mr. Peck' [sic]
12                   request, DPC's written notice to terminate the MSA was not issued
                     until November 24, 2008.  In the written notice of termination,
13                   DPC informed Axon that the MSA would be terminated effective
                     at 11:59 p.m. on December 19, 2008.
14

15           Like its original counterclaim, SDDPC's amended counterclaim is deficient because it

16   fails to allege whether the MSA was terminated for convenience pursuant to Section 2.2 or for

17   cause pursuant to Section 2.3.  This was one of the deficiencies SDDPC was ordered to cure if it

18   elected to file an amended counterclaim because the issue is not whether prior to terminating

19   Axon, SDDPC and the City believed that Axon's work was deficient.  The issue is whether, even

20   assuming Axon's work was deficient, Defendants elected to terminate the MSA for convenience,

21   not cause.

22           If SDDPC terminated the MSA for convenience pursuant to Section 2.2, Axon is

23   foreclosed from seeking damages for breach of contract irrespective of whether it terminated

24   Axon because it believed Axon's work was deficient.  Once a party makes an election to

25   terminate a contract, either for cause or for convenience, that party cannot later avail itself of any

26   rights it would have had if it had made a different election. *Rogerson Aircraft Corp. v. Fairchild*

27   *Industries, Inc.*, 632 F. Supp. 1494, 1499 (C.D. Cal. 1986), considering the effect of electing to

28   terminate a contract for convenience or for cause and stating it "is fundamental that where the

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1   parties to a contract have agreed to termination provisions for that contract, those provisions are

2   binding upon the parties and must be enforced as written." *Id.* at 1499.

3          SDDPC attempts to avoid another dismissal by alleging it complied with the

4   requirements to terminate the MSA for cause:

5                  Given that DPC was [sic] provided a written notice of default to
                   Axon in late May 2008, allowed Axon approximately six months
6                  to cure its defaults, and complied with any applicable dispute
                   resolution provisions in the MSA, DPC complied with the
7                  requirements for termination under Section 2.3.

8          While SDDPC's failure to allege facts that demonstrated it complied with Section 2.3 was

9   another deficiency identified by the Court (Doc. No. 48 at pg. 5), by failing to allege the MSA

10  was terminated for cause pursuant to Section 2.3, it is irrelevant whether SDDPC complied with

11  the requirements for a termination for cause.  As discussed below, SDDPC cannot allege it

12  terminated the MSA for cause pursuant to Section 2.3 because the MSA was terminated for

13  convenience pursuant to Section 2.2.

14         Therefore, SDDPC's amended counterclaim is based entirely on speculation.  **SDDPC is**

15  **effectively alleging it <u>could have</u> terminated the MSA for cause, and that if the MSA had**

16  **been terminated for cause, SDDPC complied with the requirements of Section 2.3.**

17  SDDPC's allegations are not sufficient to state a claim because the amended counterclaim's

18  "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl.*

19  *Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Since SDDPC fails to allege the MSA was

20  terminated for cause pursuant to Section 2.3, SDDPC's amended counterclaim fails as a matter of

21  law.

22  **B.**     <u>**SDDPC's Allegations, the Notice of Termination, Judicially Noticeable Public**</u>
            <u>**Documents and Judicial Admissions Conclusively Prove That The MSA Was**</u>
23          <u>**Terminated For Convenience, Not Cause**</u>

24         Not only does SDDPC fail to allege the MSA was terminated for cause pursuant to

25  Section 2.3, but the factual allegations, documents incorporated into the counterclaim by

26  reference, judicially noticeable public documents, and Defendants' judicial admissions confirm

27  that the MSA was terminated for convenience pursuant to Section 2.2.  Therefore, SDDPC's

28  breach of contract claim fails as a matter of law.  *Schnelke v. JP Morgan Chase Bank*, 2010 U.S.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    Dist. LEXIS 28995 (E.D. Cal. Mar. 25, 2010), holding that a motion to dismiss is proper where

2    there is a failure to plead any express breach of the written agreement.

3         Interpretation of a contract is governed by state law. *Wilson Arlington Co. v. Prudential*

4    *Ins. Co. of American*, 912 F.2d 366 (9th Cir. 1990) (applying Virginia parol evidence rule). "The

5    interpretation of a written contract is a matter of law for the court even though questions of fact

6    are involved." *Southland Corp. v. Emerald Oil Co.*, 789 F.2d 1441, 1443 (9th Cir. 1986). The

7    court's goal is to ascertain the intention of the parties as expressed by the language of the

8    contract. *Hensler v. City of Los Angeles*, 124 Cal.App.2d 71, 77 (1954). "The whole of a

9    contract is to be taken together, so as to give effect to every part, if reasonably practicable, each

10   clause helping to interpret the other." Cal. Civ. Code § 1641.

### 1.    SDDPC's Factual Allegations Confirm the MSA Was Terminated For Convenience

The express provisions of the MSA provide that it could be terminated under four separate

circumstances: (1) with 30 days' advance written notice pursuant to Section 2.2; (2) within 30

days of giving Axon written notice of default and Axon's failure to cure that would be effective

immediately pursuant to Section 2.3; (3) for lack of City funding pursuant to Section 2.4; and (4)

for circumstances outside the party's reasonable control to prevent (i.e., force majeure) pursuant

to Section 19. Request for Judicial Notice ("RJN") ¶1, Doc. No. 20 ("FAC"), Exh. 1 at pgs. 4,

12.

Despite SDDPC's allegations that Axon's work was deficient, SDDPC alleges it

terminated the MSA by giving Axon approximately 30 days' advance notice. AC at ¶ 22,

alleging that "Axon was notified telephonically on November 20, 2008 that DPC was terminating

the MSA", which pursuant to the written notice was to be "effective at 11:59 p.m. on December

19, 2008." Of the four ways the MSA could be terminated, this is squarely a termination for

convenience pursuant to Section 2.2:

> 2.2    This Agreement may be terminated by Client by giving
> Axon at least thirty (30) calendar days advance written notice prior
> to the termination date specified in such notice. Unless otherwise
> requested by Client, Axon shall use commercially reasonable
> efforts to minimize any wind-down costs associated with such a
> premature termination of the Agreement.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1     FAC, Exh. 1 at pg. 4.

2         Pursuant to Section 2.2, Axon could be terminated for convenience by providing Axon

3     with 30 calendar days' advanced written notice of the termination.  This is exactly what SDDPC

4     alleges occurred.  AC at ¶22.  Although SDDPC alleges Axon's work was deficient, SDDPC's

5     factual allegations confirm that it elected to terminate Axon for convenience by providing Axon

6     30 days' advance notice of the termination.

7         **2.     Judicially Noticeable Public Documents and Admissions Prove the MSA Was**
          **Terminated for Convenience**

8

9         Acts of the parties, subsequent to the execution of the contract and before any controversy

10    has arisen as to its effect, may be looked to in determining the meaning and effect of the contract.

11    Witkin, *Summary of California Law* (10th ed.) at § 749, p. 839.  As the City's wholly owed IT

12    service provider, the circumstances of Axon's termination is well documented in public records.

13    These documents confirm, without reasonable dispute, that at the time the contract was being

14    performed and prior to any conflict or litigation, SDDPC and the City intended to terminate Axon

15    for convenience pursuant to Section 2.2 of the MSA.

16        In a Rule 12(b)(6) Motion to Dismiss, a court may take judicial notice of facts outside

17    pleadings, and taking such notice of pleadings, orders, and other papers filed with the court or

18    records of administrative bodies does not convert a motion to dismiss into a motion for summary

19    judgment.  *Mack v. South Bay Beer Distributors,* 798 F.2d 1279, 1282 (9th Cir. 1986); *Del Puerto*

20    *Water Dist. v. U.S. Bureau of Reclamation,* 271 F. Supp.2d 1224, 1234 (E.D.Cal.2003).  Prior

21    allegations, even in absence of express incorporation, should be considered in determining

22    whether good claim for relief is stated. *Fleischmann Distilling Corp. v Distillers Co.,* 395 F Supp

23    221 (1975, SD NY).

24        Although the Court may take judicial notice of the following documents in determining

25    whether the MSA was terminated for convenience without converting this Rule 12(b)(6) Motion

26    into a motion for summary judgment, to the extent the Court is not inclined to consider the

27    documents on a motion to dismiss, Axon respectfully requests the Court consider these

28    documents on its alternative request for Motion for Summary Judgment.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

On November 19, 2008, the City directed SDDPC to immediately terminate the MSA for convenience, stating: "It is our understanding that section 2.2 of the MSA provides for the option of termination for convenience within 30 days after receipt of written notice." RJN ¶2, Exh. A; See also FAC, Exh. 10. Although the City believed there was "ample support for a termination for non-performance under Section 2.3", SDDPC was instructed to "immediately provide Axon with a notice of termination under section 2.2 of the MSA."[3]  *Id.*

The following day, November 20, 2008, the City confirmed the MSA was terminated for convenience: "The City is terminating for convenience. During the next 30 days the City, [SD]DPC, and Axon will be in settlement discussions." RJN ¶3, Exh. B; See also FAC, Exh 2. The parties did in fact engage in settlement discussions over approximately the next 30 days culminating in a final billing invoice of $4,863,028 for work performed through December 19, 2008. The settlement discussions are fully documented. RJN ¶4; See also FAC, Exhs. 3-9.

Further, in its Answer to Axon's First Amended Complaint, the "City admits that on November 19, 2008, SDDPC terminated Axon based on conveniences as allowed by Section 2.2 of the Master Services Agreement. City admits that on November 20, 2008, City's Chief Financial Officer reported to the City Council the circumstances involved in the termination of Axon's contract." RJN ¶5; See also Doc. No. 41 at pg. 4, ¶18. Similarly, in response to Axon's FAC, SDDPC admits:

- "...that on November 19, 2008, the City Council was informed of the decision and rationale for terminating the contract with Axon..." RJN, ¶2, SDDPC's Answer to FAC, Doc. No. 24 at ¶¶18.

- "...that Mary Lewis, Chief Financial Officer, and Greg Levin, City Comptroller, prepared a memorandum for the City Council dated November 20, 2008, related to the OneSD Project Management Change and Axon Contract Termination..."[4]  *Id.*

- "that [SDDPC] discussed with Axon the performance and completion of work by Axon through December 19, 2008, as well as the preparation of a transition plan to address resources, preservation of documents, and wind-down costs." RJN ¶4, SDDPC's Answer to FAC, Doc. No. 24 at

---

[3] This is consistent with SDDPC's allegations that it could have terminated the MSA for cause, discussed above in Section V(A).

[4] As discussed below, Mary Lewis, who directed SDDPC to terminate the MSA with Axon for convenience pursuant to Section 2.2 and reported to the City Council that Axon had been terminated pursuant to Section 2.2, also drafted the May 27, 2008 letter that SDDPC claims was a default notice under Section 2.3 of the MSA.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

¶25.

- "that Jason Hsleh [sic] of Axon informed [SDDPC] in electronic mail dated December 19, 2008, as part of settlement efforts, that Axon claimed it was owed $2,691,770 for 100% completed deliverables, $2,096,007 for partially completed deliverables, and $75,251 in wind-down costs, for a total of $4,863,028." RJN, ¶4, SDDPC's Answer to FAC, Doc. No. 24 at ¶28, See also ¶35.

There is no dispute that on November 19, 2008, the City Council was informed of the decision and rationale for terminating Axon, which included the decision and rationale for terminating Axon for convenience pursuant to Section 2.3. This was again repeated in the November 20, 2008 memorandum, explaining that Axon had been terminated for convenience pursuant to Section 2.3. Moreover, SDDPC admits that the parties engaged in settlement discussions over approximately the next 30 days culminating in a final billing invoice of $4,863,028 for work performed and wind-down costs through December 19, 2008. There was no reason to discuss settlement or entitlement to wind-down costs if Axon had been terminated for cause pursuant to Section 2.3.

Pursuant to the MSA, Axon is not entitled to settlement and wind-down costs if Axon was terminated for cause. Axon's entitlement to wind-down costs arises from the MSA being terminated for convenience pursuant to Section 2.2, which states in relevant part: "Unless otherwise requested by Client, Axon shall use commercially reasonable efforts to minimize any wind-down costs associated with such a premature termination of the Agreement." RJN ¶1, See also FAC, Exh. 1 at pg. 4. However, SDDPC's formal termination notice requests that Axon contact SDDPC regarding settlement of the wind-down costs: "Please contact the undersigned or Tom Fleming to prepare a transition plan to immediately address resources, preservation of documents and wind-down costs." RJN ¶6; See also FAC, Exh. 2.

The court need not accept as true allegations that contradict facts which may be judicially noticed such as matters of public record including pleadings, orders, and other papers filed with the court or records of administrative bodies. See *Mullis v. United States Bankruptcy* Ct. 828 F.2d 1385, 1388 (9th Cir. 1987); *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986). Nor does the court need to accept as true conclusions of law, conclusory allegations,

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

Axon's Memo of P's & A's ISO Its Mtn to Dismiss
SDDPC's First Amended Counterclaim
Case No. 09-CV-2543 JM BGS

1  unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643

2  F.2d 618, 624 (9th Cir. 1981).  Therefore, the Court should disregard SDDPC's unsupported legal

3  conclusions "cast in the form of factual allegations" because SDDPC's own allegations, the

4  MSA/SOW, judicially noticeable documents, and Defendants' judicial admissions show that the

5  MSA was terminated for convenience, not cause.

6  **C.  SDDPC's Factual Allegations Confirm SDDPC Did Not Comply With The Requirements To Terminate the MSA For Cause**

7

8  Not only does SDDPC fail to allege the MSA was terminated for cause pursuant to

9  Section 2.3, and the Defendants' judicial admissions and judicially noticeable public documents

10  prove the MSA was terminated for convenience pursuant to Section 2.3, but the factual

11  allegations of the amended counterclaim demonstrate that SDDPC did not comply with the

12  requirements to terminate the MSA for cause.

13  **1.  SDDPC Fails To Allege Axon Was Terminated Within 30 Days Of Issuing A Written Notice of Default That Axon Was Unable To Cure**

14

15  SDDPC does not and cannot allege that within 30 days of issuing a written notice of

16  default and Axon's inability to cure, Axon was immediately terminated.  This is what is required

17  to comply with a termination for cause pursuant to Section 2.3:

18         2.3     Subject to the Dispute Resolution provision in Section 21 and in addition to other provisions in this Agreement allowing a

19  party to terminate this Agreement in whole or in part, and without limiting any other remedies available at law, or under this

20  Agreement, if any party materially or repeatedly defaults in the performance of any of its duties or obligations under this

21  Agreement, and: **(1) within thirty (30) calendar days after written notice of the default;** or, (2) with respect to those defaults

22  that cannot be reasonably cured within thirty (30) calendar days, **then the Party not in default may terminate this Agreement by**

23  **giving written notice of the termination to the defaulting Party, which termination shall be effective immediately upon receipt**

24  **of the notice of termination.**  If the default is incapable of being cured, then the thirty (30) calendar day cure period shall not apply,

25  and notice of termination may be given directly by the party not in default.  RJN ¶1; See also FAC, Exh. 1 at pg. 4.

26

27  Section 2.3 of the MSA expressly provides the requirements which must be met in order

28  to effectively terminate the MSA for cause: (1) Axon materially or repeatedly defaults in its

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1   performance; (2) SDDPC issues a written notice of default and if Axon is unable to cure; (3)

2   within 30 calendar days after issuing the default notice, SDDPC  issues a written notice of

3   termination that is effective immediately upon receipt.  SDDPC admits that "Section 2.3 of the

4   MSA provides that termination of the MSA thereunder shall be effective immediately upon

5   receipt of the notice of termination".  AC at ¶22.  Contrary to the requirements of Section 2.3,

6   SDDPC alleges Axon's work was deficient, the City prepared a letter outlining insufficiencies of

7   Axon's updated Proposed Plan for the Project that SDDPC forwarded to Axon, and 6 months

8   later SDDPC issued a written notice of termination, which was to be effective 30 days after Axon

9   was notified by telephone of the termination.

10      SDDPC, the City, and Axon are sophisticated parties, who entered into a $16.9 million

11  dollar commercial contract for IT services with the assistance and approval of counsel.

12  Compliance with the requirements of Section 2.3 is necessary to put the parties on notice of their

13  rights and obligations arising out of an election to terminate for cause.  The contract terms

14  concerning what steps must be followed to terminate the MSA for cause are designed to protect

15  the non-terminating party.  If the MSA was terminated for cause pursuant to Section 2.3, the

16  termination was to be effective immediately.  Otherwise, the non-terminating party, here Axon,

17  would  be forced to continue working without any expectation of compensation for the work it

18  had previously done or the work it was continuing to do up to the effective termination date

19  because the contract was being terminated for cause.  That is the whole reason behind an

20  immediate termination for cause versus a termination with 30 days' advance notice for

21  convenience.  Where the contract is terminated for convenience, the non-terminating party knows

22  it will be paid (or should be paid) for the work performed, including work performed during the

23  30 days between the date it was notified it was being terminated and the effective date of

24  termination.

25      The terms of the MSA cannot be unilaterally changed, without notice, by SDDPC simply

26  because SDDPC believed such a change "was critical to ensuring a smooth transition and

27  reducing any disruptions to the overall completion of the OneSD Project." AC at ¶22.  According

28  to SDDCP, it could terminate the contract for cause, refuse to pay for work performed, but require

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1   that Axon continue working without pay because SDDPC wanted a smooth and non-disruptive

2   transition.  That is not what is required by the terms of Section 2.3.  The terms of the MSA could

3   not be modified unless done so in writing and signed by the parties.  Doc No. 20 (FAC), Exh 1

4   (MSA) at pg. 11, Section 17.1.  Therefore, SDDPC's amended counterclaim fails because

5   SDDPC did not comply with the requirements for terminating the MSA for cause pursuant to

6   Section 2.3.

7       **2.    The May 27, 2008 Letter From The City Was Not A "Notice Of Default"**

8       Under the "incorporation by reference" doctrine, the Court may consider documents that

9   are referenced extensively in the complaint and accepted by all parties as authentic, even if they

10   are not physically attached to the complaint without converting the Rule 12(b)(6) motion into one

11   for summary judgment.  *In re Silicon Graphics, Inc. Securities Litigation* (9th Cir., 1999) 183 F.3d

12   970; *Van Buskirk v. Cable News Network, Inc.* (9th Cir., 2002) F.3d 977, 980.  Documents that are

13   attached to a motion to dismiss are considered part of the pleadings if they are referred to in the

14   counterclaim and are central to the claim, and court's consideration of such documents does not

15   require that motion to dismiss be treated as motion for summary judgment. *Venture Assoc. Corp.*

16   *v Zenith Data Systems Corp.* 987 F2d 429 (1993).  Even though a document is not incorporated

17   by reference into a complaint, the court may nevertheless consider it in ruling on motion to

18   dismiss where the complaint relies heavily upon its terms and effect, which thus renders

19   document integral to complaint. *Chambers v Time Warner, Inc.* 282 F3d 147 (2002).  In a breach

20   of contract action in which letter allegedly formed basis of contract, where plaintiff did not

21   incorporate letter by reference or attach letter to its complaint, but letter was referred to in

22   complaint and was central to plaintiff's claim, court properly considered indisputably authentic

23   copy of letter which was submitted by defendant, without converting motion to dismiss into

24   summary judgment motion. *GFF Corp. v Associated Wholesale Grocers*, 130 F3d 1381 (1997).

25       Here, SDDPC relies on a May 27, 2008 letter prepared by the City to support its breach of

26   contract claim; specifically, that it complied with Section 2.3 of the MSA by issuing to Axon a

27   written notice of default describing in detail the alleged deficiencies of Axon's work.  SDDPC

28   alleges that after the City reviewed Axon's updated Proposed Plan for the Project, Mary Lewis,

the City's Chief Financial Officer wrote a letter dated May 27, 2008, stating that after performing "a detailed review of Axon's Plan," the City was "disappointed to find an unfinished project schedule and an outdated resource matrix as the core of the Plan." AC at ¶12.

Although SDDPC conveniently labels this letter a "Default Notice", nowhere in the letter does it suggest that it is a default notice or state that Axon has 30 days to cure the alleged deficiencies or it will be immediately terminated for cause. To the contrary, the beginning of the letter, which SDDPC did not quote in its amended counterclaim, confirms the letter was part of an open discussion between the City and Axon related to concerns the City had on the project, and specifically the updated Proposed Plan: "Thank you for meeting with the OneSD City Project Management Team and Executive Sponsers on May 19, 2008. I appreciate your desire to openly and candidly discuss our OneSD project concerns." RJN ¶7, Exh. C. The City concluded by stating it was their intent to work with Axon to resolve the City's concerns: "It is my sincere hope that we can work toward a mutually agreeable solution to this difficult and concerning situation." *Id.,* See also AC at ¶12.

The City did not sign or execute the MSA, and in fact the City and SDDPC have consistently maintained that only SDDPC has any rights or obligations under the MSA. Therefore, a letter from the City could not as a matter of law constitute a written notice of default under Section 2.3 irrespective of SDDPC's allegation that a copy of the letter was subsequently "forwarded" to Axon. AC at ¶12. Rather, despite SDDPC's conclusory labels which should be disregarded by the Court, the correspondence was merely a letter from the City to Axon openly discussing concerns the City had with the project in an effort to find a "mutually agreeable solution".

Additionally, the letter does not contain the words "notice" or "default", or otherwise state, suggest or imply that Axon must cure any default within 30 days or it will be immediately terminated pursuant to Section 2.3 of the MSA. SDDPC alleges that on June 2, 2008, a copy of the letter was sent to Axon's President and CEO, Steve Peck. AC at ¶13. The letter was labeled "Letter from Mary Lewis". RJN ¶8, Exh. D. In Mr. Peck's June 2, 2008 response, referenced and quoted in part in SDDPC's amended counterclaim, Mr. Peck references the "letter from

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    Mary". *Id.* SDDPC distorts its own allegations by inserting the legal term "default notice" in

2    place of "letter from Mary", when nowhere in that response does it reference, let alone state, the

3    words "default notice." See e.g., AC at ¶13.

4         Further, Mr. Peck's June 2, 2008 response discusses setting up a "EGC meeting scheduled

5    in San Diego for the week of July 14", which is over two weeks after SDDPC was required to

6    terminate Axon if the May 27, 2008 letter from Mary Lewis was a notice of default under Section

7    2.3 of the MSA.   RJN ¶8, Exh. D.   Similarly, Mr. Peck stated Axon was putting its full weight

8    "behind the success of this project and look forward to a successful go-live on the mutually

9    agreed-up date". AC at ¶13.   These statements contradict SDDPC's claim the May 27, 2008

10   letter was a default notice because the parties are discussing Axon's continued work on the

11   project through the project's completion.

12        The series of correspondence that are alleged to have followed and the alleged conduct of

13   the parties further contradict SDDPC's characterization of the May 27, 2008 letter from the City

14   as a notice of default under Section 2.3 of the MSA.   SDDPC alleges that SDDPC and the City

15   wanted Axon to continue working and Axon continued to work between May 2008 up to and

16   beyond November 20, 2008, when Axon was notified the MSA was being terminated.   AC at

17   ¶¶14-19.   During this time, SDDPC alleges, based on the communications between Axon and the

18   City, that Axon was responding to the City's concerns, implementing the SAP recommendations,

19   preparing a Phase I and II Go Live Plan, attending meetings, and expressing a "commitment to

20   bring all the resources needed to bear from Axon to ensure success."   *Id.*

21        These communications contradict SDDPC's conclusory allegation that SDDPC was given

22   a written notice of default on May 27, 2008, that required Axon to cure the default or be

23   terminated within 30 days.   Indeed, SDDPC alleges that on July 9, 2008, an Executive

24   Governance Committee ("EGC") was established to "monitor Axon's performance and the status

25   of the OneSD Project."   AC at ¶18.   Setting up a committee to monitor Axon's performance

26   through completion of the project contradicts SDDPC's characterization of the May 27, 2008

27   letter from the City as a default notice. As of July 9, 2008, there would be nothing further for

28   Axon to do or for the EGC to monitor because SDDPC would have been required to already

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    terminate Axon if the May 27, 2008 letter was a "notice of default" pursuant to Section 2.3.

2         As discussed above, SDDPC was required to issue a notice of termination within 30 days

3    of the default notice that was to be effective immediately upon receipt. If the May 19, 2008 letter

4    was a notice of default, Axon was required to cure the alleged deficiencies by June 28, 2008 (i.e.,

5    30 days) or be immediately terminated. Instead, SDDPC's factual allegations demonstrate that

6    the May 19, 2008 letter from Mary Lewis of the City was part of an ongoing discussion between

7    the City and Axon regarding difficulties they were encountering with the OneSD project.

8    SDDPC admits that "roughly six months" had past between the May 27, 2008 letter and SDDPC

9    issuing a notice of termination, "far in excess of the 30-day cure period provided for under

10   Section 2.3 of the MSA". AC ¶21. Therefore, as a matter of law, the May 27, 2008 letter was

11   either not a default notice, or if under a strained interpretation it could be construed as a default

12   notice, it was completely ineffective as of November 20, 2008, when SDDPC allegedly

13   terminated Axon because over 6 months had past from the time it was issued to when SDDPC

14   issued the notice of termination.

15   **D.    SDDPC Accepted Axon's Work and Did Not Satisfy The Dispute Resolution**
16        **Procedures**

17        SDDPC does not and cannot allege that it rejected any of Axon's work. The "Acceptance

18   Procedure" set forth in the SOW provides that SDDPC must approve or disapprove acceptance of

19   the deliverables within five (5) business days, and if the deliverables are "neither approved nor

20   rejected within five (5) business days, the Deliverable will be deemed to have been approved by

21   DPC without change or comment." Doc. No. 20 (FAC), Exh. 1 at pg. 41. If SDDPC did not

22   approve any deliverables, SDDPC was required to "provide Axon with a description of why the

23   Deliverable cannot be approved." *Id.*

24        SDDPC never alleges that it rejected any of Axon's work or provided Axon with a

25   description of why any particular deliverable could not be approved. Having never rejected

26   Axon's work, SDDPC cannot maintain a claim that Axon's work was defective. Pursuant to the

27   express terms of the contract, Axon's work was accepted. Sections 2.3 and 3.10.4 of the MSA

28   required SDDPC to give Axon notice it was rejecting its work and the reason for the rejection.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    (*Id.* at pgs. 4, 6.)  SDDPC does not allege any of this occurred.  Similarly, SDDPC was required

2    to notify Axon of any alleged deficiencies SDDPC claims were discovered after Axon was

3    terminated.  The MSA required that SDDPC reject these deliverables, notify Axon in writing why

4    it was rejecting these deliverables, and give Axon an opportunity fix any purported deficiencies.

5    Further, to the extent SDDPC is claiming there was a dispute arising out of these alleged

6    subsequently discovered deficiencies, SDDPC was required to engage in the dispute resolution

7    efforts pursuant to Section 21.

8        Instead, SDDPC's amended counterclaim confirms SDDPC never rejected these

9    deliverables, never notified Axon of any deficiencies in these deliverables, or attempted to resolve

10   any dispute with respect to these deliverables.  SDDPC simply refused to pay Axon for these

11   deliverables, without explanation, depriving Axon of its contractual right to fix any alleged

12   defects so that it could be compensated for the work.  The MSA and SOW does not allow SDDPC

13   to unilaterally decide a deliverable is defective, conceal the alleged defect from Axon, and

14   without giving Axon any input, notice, or opportunity to resolve the dispute, simply refuse to pay

15   Axon for its work.

16                                            **VI.**
17   **TERMINATING FOR CONVENIENCE BARS SDDPC'S CLAIM FOR BREACH OF**
     **CONTRACT**

18       As discussed above, this Court has already analyzed the effect of terminating the MSA for

19   convenience.  The Court found that if the MSA was terminated for convenience, SDDPC could

20   not assert a claim for damages based on breach of contract.  Doc. No. 48 at pgs. 3-4.  The Court

21   explained: "When considered alongside Section 2.3, Section 2.2 appears to provide termination

22   'for convenience' that prevents SDDPC from pursuing breach of contract damages....It appears

23   the MSA does not provide a breach of contract remedy to SDDPC if SDDPC terminated the

24   contract pursuant to Section 2.2." *Id.* at pgs. 4-5.  The Court's analysis is consistent with

25   decisional authority which holds that by electing to terminate for convenience, not cause,

26   SDDPC's counterclaim for breach of contract is barred as a matter of law.

27       It is well settled that terminating a contract for convenience bars the terminating party

28   from bringing a subsequent claim for breach of contract damages.  See Cibinic & Nash,

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    *Administration of Government Contracts* at pg. 1085 (3d ed. 1995).  In *Fruin-Colnon Corp., et.*

2    *al., v. Niagara Frontier Trans. Authority*, 180 A.D.2d 222 (1992) the Court squarely addressed

3    the effect of terminating a contract for convenience.  In *Fruin-Colnon*, plaintiff tunnel builder

4    sought to recover additional compensation for work it performed for the defendant, who had

5    terminated its contract with the plaintiff for convenience.  The defendant took the position that the

6    plaintiff was not entitled to additional compensation for the work it performed and the defendant

7    was entitled to an offset for any claims made by plaintiff based upon money paid to a third party

8    for remediation of plaintiff's work.  The court disagreed, holding that defendant's termination for

9    convenience deprived the plaintiff of its contractual rights to cure the alleged defects, and

10   therefore any counterclaim or offset arising out of those alleged defects was barred.  *Id*. at 233-

11   234.

12        Here, like in *Fruin-Colnon*, SDDPC is claiming $6 million dollars in remedial work

13   "required to correct Axon's errors and faulty performance and place the system into operation."

14   (CC, ¶ 11.).  As discussed in *Fruin-Colnon*, by terminating the MSA for convenience, SDDPC

15   deprived AXON of its contractual rights to cure any alleged defects.  Therefore, SDDPC's claim

16   for damages are barred.

17        Similarly, in *Tishman Construction Corp, Inc. v. City of New York*, 228 A.D.2d 292

18   (1996), the City of New York entered into an agreement with plaintiff which permitted the City to

19   terminate plaintiff's services for convenience, subject to City paying plaintiff the amounts due

20   and owing to plaintiff as of the effective date of termination.  Like this case, the plaintiff brought

21   suit to recover payment for the services it had provided up to the date of termination.  The City

22   counterclaimed for damages to cure plaintiff's alleged breach and for alleged overpayments.  The

23   *Tishman* Court affirmed the lower court's grant of plaintiff's motion for summary judgment as to

24   the City's claim for remedial damages, holding that "[w]here the City elects to terminate for

25   convenience…whether with or without cause, it cannot counterclaim for the cost of curing any

26   alleged default."  *Id*. at 293.  Additionally, the Court held that the City could not maintain a claim

27   for overpayments for plaintiff's services to the extent the payments were made pursuant to the

28   contract.  *Id*.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    Additionally, in *Paragon Restoration Group, Inc. v. Cambridge Square Condominiums*,

2   42 A.D.3d 905 (2007), the Court affirmed the lower court's dismissal of the defendant's

3   counterclaim for the cost of curing plaintiff's alleged default because the defendant terminated the

4   contract for convenience. *Id.* at 906.  Although these are New York Supreme Court cases, a

5   thorough search for California cases directly on point was unavailing, and therefore these cases

6   provide ample guidance to California courts addressing this issue.  A California case that is

7   applicable by analogy is *Rogerson Aircraft Corp. v. Fairchild Industries, Inc.*, 632 F. Supp. 1494

8   (C.D. Cal. 1986).  In *Rogerson*, like this case, the contract at issue provided that the parties could

9   elect to either terminate for convenience or terminate for cause.  The court held that it "is

10   fundamental that where the parties to a contract have agreed to termination provisions for that

11   contract, those provisions are binding upon the parties and must be enforced as written." *Id.* at

12   1499.  The *Rogerson* court explained that once a party made an election to terminate for cause, it

13   could not later avail itself of any rights it would have had if it terminated for convenience.  *Id.*

14    By analogy, *Rogerson* is directly on point by finding that the termination provisions were

15   structured to force the terminating party to elect to either terminate for convenience, "requiring a

16   speedy close-out of the contract and the payment of Rogerson's termination costs and settlement

17   expenses" or terminate for default "without having to pay a termination settlement." *Id.* at 1499.

18   The *Rogerson* court held that having elected to terminate for cause, the terminating party could

19   not thereafter change that election by claiming it terminated for convenience in order to "obtain[]

20   substantial leverage for subsequent settlement negotiations" because such a result would be

21   inequitable and contrary to the parties' manifest intent. *Id.* at 1500.

22    As fully analyzed in Axon's reply in support of its motion to dismiss SDDPC's original

23   complaint, these cases are consistent with California law.  Doc. No. 45 at pgs. 4-10.  To avoid

24   needlessly belaboring the point, to the extent the Court requires further briefing on that issue,

25   Axon incorporates that discussion by reference as if set forth fully herein.

26                          **VII.**
   **SDDPC CANNOT CURE THEIR DEFECTIVE PLEADING BY AMENDMENT**
27

28    Although leave to amend must be granted unless it is clear that the complaint's

*Ropers Majeski Kohn & Bentley*
*A Professional Corporation*
*San Jose*

1   deficiencies cannot be cured by amendment, when an amendment would be futile, dismissal may

2   be ordered with prejudice. *Lucas v. Department of Corrections* (9th Cir., 1995) 66 F.3d 245, 248;

3   *Dumas v. Kipp* (9th Cir., 1996) 90 F.3d 386, 393.  Dismissing a claim without leave to amend is

4   appropriate where the facts are not in dispute and the sole issue is whether there is liability as a

5   matter of substantive law. *Albrecht v. Lund*, 845 F.2d 193, 195-196 (9th Cir. 1988).

6          Here, SDDPC's own allegations and the MSA foreclose the possibility that SDDPC could

7   amend its breach of contract claim to state a cause of action.  Rather, SDDPC will never be able

8   to state a cause of action for breach of contract because its own allegations, judicially noticeable

9   public documents, and Defendants' judicial admissions confirm that the MSA was terminated for

10  convenience, not cause.  Therefore, leave to amend is futile and should not be granted.

### VIII.
### ALTERNATIVELY, AXON IS ENTITLED TO SUMMARY JUDGMENT THAT SDDPC'S COUNTERCLAIM IS BARRED BY TERMINATING THE MSA FOR CONVENIENCE

14         While Axon maintains the Court can dismiss SDDPC's amended counterclaim pursuant to

15  Rule 12(b)(6), to the extent the Court needs to consider matters outside the pleadings, Axon

16  requests the Court convert Axon's Motion to Dismiss into a Rule 56 Motion for Partial Summary

17  pursuant to Rule 12(d).  Axon requests the Court adjudicate that the MSA was terminated for

18  convenience pursuant to Section 2.2, and as a result, SDDPC Amended Counterclaim for breach

19  of contract is barred as a matter of law.

### IX.

### CONCLUSION

22         Based on the foregoing reasons and authorities, Axon respectfully requests the Court grant

23  Axon's Motion to Dismiss SDDPC's First Amended Counterclaim for Breach of Contract

24  pursuant to Rule 12(b)(6).  Alternatively, to the extent the Court is unwilling to dismiss SDDPC's

25  amended counterclaim pursuant to Rule 12(b)(6), Axon respectfully requests the Court convert its

26  motion to dismiss to a motion for summary judgment pursuant to Fed.R.Civ.P. 12(d) and 56.

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    Dated: August 9, 2010                    ROPERS, MAJESKI, KOHN & BENTLEY

2

3                                             By:  /s/ Daniel P. McKinnon
                                                  MICHAEL J. IOANNOU
4                                                 LITA M. VERRIER
                                                  DANIEL P. McKINNON
5                                                 Attorneys for Plaintiff
                                                  AXON SOLUTIONS, INC.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

RCI/5649332.3/DPM                    - 21 -