MICHAEL J. IOANNOU (SBN 95208)
LITA M. VERRIER (SBN 181183)
DANIEL P. McKINNON (SBN 234749)
ROPERS, MAJESKI, KOHN & BENTLEY
50 W. San Fernando St., Suite 1400
San Jose, CA  95113
Telephone:  (408) 287-6262
Facsimile:  (408) 918-4501
mioannou@rmkb.com;
lverrier@rmkb.com;
dmckinnon@rmkb.com

Attorneys for Plaintiff and Counterdefendant
AXON SOLUTIONS, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AXON SOLUTIONS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>SAN DIEGO DATA PROCESSING CORPORATION, a California publicly owned corporation; and the CITY OF SAN DIEGO, a charted political subdivision of the State of California,<br><br>Defendants.<br><br>CITY OF SAN DIEGO, a charter political subdivision of the State of California,<br><br>Counterclaimant,<br><br>v.<br><br>AXON SOLUTIONS, INC., a Delaware corporation,<br><br>Counterdefendant. | CASE NO.  09 CV 2543 JM BGS<br>The Honorable Jeffrey T. Miller<br><br>**PLAINTIFF AXON SOLUTIONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS COUNTERCLAIMANT SAN DIEGO DATA PROCESSING CORPORATION'S SECOND AMENDED COUNTERCLAIM FOR BREACH OF CONTRACT [FRCP 12(b)(6)]**<br><br>Date: January 28, 2011<br>Time: 1:30 p.m.<br>Judge:  The Hon. Jeffrey T. Miller<br>Courtroom: 16, 5th Floor<br><br>**Complaint filed:  November 12, 2009** |

Plaintiff and Counterdefendant AXON SOLUTIONS, INC. ("Axon") respectfully submits the following Memorandum of Points and Authorities in Support of its Motion to Dismiss Defendant and Counterclaimant SAN DIEGO DATA PROCESSING CORPORATION'S ("SDDPC") Second Amended Counterclaim for Breach Contract ("SAC") (Doc. No. 73) pursuant to Federal Rules of Civil Procedure 12(b)(6).

On October 21, 2010, the City filed its Compulsory Counterclaim For Breach of Third Party Beneficiary Contract ("CC") (Doc. No. 71.). As the Court noted in its Order Granting Defendant City of San Diego's Motion for Leave to File Counterclaim and Amended Answer, the City's counterclaim for breach of contract is virtually identical to that already filed by SDDPC. (See Doc. No. 51.)." (Doc. No. 69 at 4:7-9.) On November 22, 2010, Axon filed its Motion to Dismiss the City's CC. (Doc. No. 75). Since the SDDPC's and the City's counterclaims are virtually identical, this Motion is also virtually identical. In an effort to avoid redundancy, the hearings on both are scheduled for the same day.

# I.
# INTRODUCTION

SDDPC's SAC fails because it does not allege that SDDPC complied with the MSA's dispute resolution provision prior to terminating the MSA for cause as required by Section 2.3. Instead, SDDPC's SAC alleges that after the MSA was terminated, the parties engaged in settlement discussions concerning Axon's attempt to recover monies owed to it by the City and SDDPC for unpaid deliverables. This is consistent with Axon's allegations in its First Amended Complaint that after Axon was terminated for convenience, the parties engaged in settlement discussions concerning the amounts owed to Axon for work done up to the effective termination date. (Doc. No. 20 ("FAC"), ¶¶30-41.) The parties never engaged in any dispute resolution efforts with respect to a dispute over whether Axon's alleged breach of the MSA caused $6 million in remediation damages. This simply did not occur. Therefore, SDDPC's SAC fails as a matter of law.

## II.
## BACKGROUND

On October 19, 2010, the Court granted Axon's Motion to Dismiss Defendant San Diego Data Processing Corporation's First Amended Counterclaim ("FACC"), and summarized the relevant facts applicable to this Motion. (Doc. No. 68 at 2:3-4:1.) In dismissing SDDPC's FACC, the Court again held that the MSA could be terminated for either convenience under Section 2.2, or for cause under Section 2.3, and that SDDPC's breach of contract claim was barred as a matter of law if SDDPC elected to terminate the MSA for convenience:

> Section 2.2 and 2.3 differ in their required procedures for termination. In addition, while Section 2.3 explicitly reserves the rights of the parties to "any other remedies available at law, or under this Agreement," Section 2.2 makes no such qualification. Thus, as this court previously found, when the two sections are read alongside one another, it appears that termination of the MSA under Section 2.2 causes the terminating party to forfeit its right to pursue other remedies, including damages for breach of contract. (Doc. No. 48 pp. 4_5; see also CAL. CIVIL CODE § 1641 ("The whole of the contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.").) Therefore, whether or not SDDPC has adequately stated a claim for relief depends upon whether it has pled facts sufficient to show that it terminated the MSA for cause. (Doc. No. 68 at 5:20-6:3.)

Axon moved to dismiss SDDPC's FACC on a number of different grounds, attempting to show that it had not alleged basic facts that are consistent with a termination for cause because whatever concerns SDDPC (or the City) had about Axon's work, the truth is that SDDPC and the City ultimately elected to terminate the MSA for convenience pursuant to Section 2.2. After construing the allegations in the light most favorable to SDDPC, and accepting those allegations as true, the Court again granted Axon's Motion to Dismiss:

> [A]lthough SDDPC has pled facts sufficient to meet the other requirements for termination for cause, its failure to allege compliance with the MSA's dispute resolution requirement means the FACC does not show compliance with all elements of Section 2.3. This is a prerequisite in order for SDDPC to state a claim for breach contract. Therefore, the court GRANTS Axon's motion to dismiss with leave to amend to permit SDDPC to address this deficiency." *Id*. at 13:6-10.

Therefore, the Court has already addressed the sufficiency of SDDPC's SAC with respect to the other requirements for a termination for cause. The remaining issue is whether SDDPC's SAC (and the City's CC) allege facts that show SDDPC complied with the dispute resolution provisions of the MSA as required to terminate the MSA for cause pursuant to Section 2.3.

In opposition to Axon's Motion to Dismiss its FACC, SDDPC argued it sufficiently alleged compliance with the dispute resolution by alleging "'[SDDPC] and its representatives attempted to resolve the City and [SDDPC's] concerns regarding Axon's deficient performance in accordance with the dispute resolution provisions in Section 21.' (Doc No. 62, p.5 (quoting FACC ¶23).)" (Doc No. 68: 12:26-13:1.). The Court held "this claim is little more than a conclusory statement, devoid of any factual basis. This is insufficient to demonstrate compliance with Section 21." *Id*. at 13:3-5.

In its SAC, SDDPC added allegations related to communications between SDDPC and Axon after the MSA was terminated in attempt to show compliance with the dispute resolution requirement of Section 2.3. However, each of these allegations occur after the MSA was terminated and relate to Axon's claim for unpaid deliverables, not SDDPC or the City's claim for $6,000,000.00 in remediation damages allegedly "required to correct Axon's errors and faulty performance", (SAC ¶ 29.)

## III.
## LEGAL STANDARD

A. **Motion to Dismiss Pursuant to Rule 12(b)(6)**

A court should dismiss an action where a complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Therefore, a motion to dismiss should be granted where the complaint lacks either a "cognizable legal theory" or facts sufficient to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In evaluating the claim a court must "accept as true all of the allegations contained in [the] complaint." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

However, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Further, the

1  court need not "accept any unreasonable inferences or assume the truth of legal conclusions cast
2  in the form of factual allegations." *Ileto v. Glock Inc.*, (9th Cir. 2003) 349 F.3d 1191, 1200. The
3  court need not accept as true, allegations that contradict facts which may be judicially noticed
4  such as matters of public record including pleadings, orders, and other papers filed with the court
5  or records of administrative bodies. See *Mullis v. United States Bankruptcy* Ct. (9th Cir. 1987)
6  828 F.2d 1385, 1388; *Mack v. South Bay Beer Distributors* (9th Cir. 1986) 798 F.2d 1279, 1282.

## IV.

### SDDPC'S COUNTERCLAIM FOR BREACH OF CONTRACT FAILS AS A MATTER OF LAW PURSUANT TO RULE 12(B)(6)

#### A. SDDPC Does Not Allege Compliance With The Dispute Resolution Procedures

11  SDDPC (and the City) add several new allegations in an attempt to show they complied
12  with the dispute resolution provisions of the MSA as required to terminate the MSA for cause
13  pursuant to Section 2.3. (*See* SAC, ¶¶ 30-40.) Rather than allege that SDDPC met with Axon
14  prior to terminating the MSA to resolve a dispute concerning Axon's alleged breach of the MSA,
15  SDDPC alleges that after Axon was terminated and replaced by SAP (SAC, ¶¶ 27-29), SDDPC
16  met with Axon to resolve a dispute related to Axon's unpaid deliverables.

17  These allegations confirm any dispute resolution efforts occurred after the MSA was
18  terminated and relate to Axon's claim that it is still owed additional payments for work performed
19  pursuant to the MSA. SDDPC's allegations are consistent with Axon's FAC that after Axon was
20  terminated for convenience, the parties engaged in settlement discussions concerning the amounts
21  owed to Axon for work done up to the effective termination date. (Doc. No. 20 ("FAC"), ¶¶30-
22  41.)

23  While SDDPC alleges it did not want to pay Axon the amounts owed because the "monies
24  paid to date to Axon represented the value received from the work Axon actually performed in
25  light of Axon's deficient performance", SDDPC and the City are not simply disputing the
26  amounts owed to Axon. Rather, they are both claiming that Axon breached the MSA, causing $6
27  million dollars in remediation damages. SDDPC does not allege that prior to terminating Axon
28  for cause, the parties engaged in any dispute resolution efforts concerning SDDPC's claim to $6

RC1/5782827.1/EC3   - 4 -   Axon's Memo of P's & A's ISO Its Mot. to Dismiss SDDPC'S Second Amended Counterclaim Case No. 09-CV-2543 JM BGS

million dollars in remediation damages caused by Axon's alleged breach of the MSA as required to terminate the MSA for cause pursuant to Section 2.3:

> 2.3 Subject to the Dispute Resolution provision in Section 21 and in addition to other provisions in this Agreement allowing a party to terminate this Agreement in whole or in part, and without limiting any other remedies available at law, or under this Agreement, if any party materially or repeatedly defaults in the performance of any of its duties or obligations under this Agreement, and: (1) within thirty (30) calendar days after written notice of the default; or, (2) with respect to those defaults that cannot be reasonably cured within thirty (30) calendar days, then the Party not in default may terminate this Agreement by giving written notice of the termination to the defaulting Party, which termination shall be effective immediately upon receipt of the notice of termination.  If the default is incapable of being cured, then the thirty (30) calendar day cure period shall not apply, and notice of termination may be given directly by the party not in default.  (*Id*., Exh. 1 at pg. 4.)

The Court has already held that in order to comply with the all the requirements for a termination for cause under Section 2.3 of the MSA, that SDDDPC attempted to resolve the dispute in accordance with the dispute resolution provision of the MSA, which requires:

> Section 21 of the MSA requires all "disputes aris[ing] from or in connection with" the contract to be determined according to a multi-stage process.  The parties must initially attempt to resolve the dispute internally; this starts out with an "escalation process," wherein the issue is referred up through two different levels of management from each side.  If the dispute is still unresolved, it then enters a "final resolution period" in which it is sent to the President of Axon and the President and CEO of SDDPC.  Any remaining issues may then be subjected to an alternative resolution procedure such as mediation with the consent of both parties, or else one or both parties may elect to resort to court proceedings.  (Doc. No. 68 at 12:16-23.)

SDDPC's SAC does not allege it engaged in any dispute resolution efforts with respect to its claim for breach of contract and $6 million in remediation damages, let alone what is required by Section 21 of the MSA.  SDDPC's SAC does not allege that it escalated the dispute through two different levels of management for each side for a period of 14 working days, or that the dispute was referred "in writing for final settlement" to the President of Axon and the President and CEO of SDDPC "for a period of (14) days from the date of the written reference."

SDDPC does not and cannot allege this occurred because the truth is that SDDPC and the

City elected to terminate Axon for convenience, so the only thing left to discuss after Axon's termination was the amounts that were owed to Axon for the work done up to the effective date of termination. This is exactly what Axon, SDDPC, and the City allege occurred. The only "differences" SDDPC and the City allege the parties were discussing after Axon's termination was Axon's claim to payment for unpaid deliverables and SDDPC's and the City's refusal to pay those amounts. While this is the basis for Axon's claims, these allegations do not support a claim by SDDPC (or the City ) that it complied with dispute resolution provisions of the MSA as required to terminate the MSA for cause pursuant to Section 2.3.

## V.
## CONCLUSION

Based on the foregoing reasons and authorities, Axon respectfully requests the Court grant Axon's Motion to Dismiss the SDDPC's Second Amended Counterclaim for Breach of Contract pursuant to Rule 12(b)(6).

Dated: November 29, 2010          ROPERS, MAJESKI, KOHN & BENTLEY


By: /s/ Daniel P. McKinnon
    MICHAEL J. IOANNOU
    LITA M. VERRIER
    DANIEL P. McKINNON
    Attorneys for Plaintiff
    AXON SOLUTIONS, INC.